PENNSYLVANIA GAS COMPANY *v.* PUBLIC SERVICE COMMISSION, SECOND DISTRICT, OF THE STATE OF NEW YORK, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 330.  Argued December 8, 9, 1919.—Decided March 1, 1920.

The transmission and sale of natural gas, produced in one State and transported and furnished directly to consumers in a city of another State by means of pipe lines from the source of supply in part laid in the city streets, is interstate commerce (p. 28); but, in the absence of any contrary regulation by Congress, is subject to local regulation of rates. P. 29. *Public Utilities Commission* v. *Landon*, 249 U. S. 236, distinguished.

225 N. Y. 397, affirmed.

THE case is stated in the opinion.

*Mr. John E. Mullin*, with whom *Mr. Marion H. Fisher* was on the briefs, for plaintiff in error:

The State has no power to regulate the rates in question, for such action necessarily imposes a direct burden and restraint upon interstate commerce.

The State in effect proposes to meet the plaintiff in error at the state line and to deny it freedom to import for sale a legitimate commodity of commerce except at a price to be fixed by the State. Nay more, the State apparently proposes not only to restrict the right of sale, but to compel the plaintiff in error to continue to import its Pennsylvania product for sale at the price fixed by the State. If such a regulation is not direct and substantial— if it does not restrain and burden interstate commerce, we can conceive of no action which would.

That a business is "regulated" when the return allowed on the business or the sale price of the commodity dealt in is fixed by governmental authority cannot be questioned, and such a regulation is far more substantial and burdensome than was the regulation of customers declared to be an unauthorized interference with commerce in the *Ticker Case*, 247 U. S. 105, or the inspection charge declared invalid by this court in *Western Oil Refg. Co.* v. *Lipscomb*, 244 U. S. 346. It is more direct than the state license fees upon agents selling and delivering interstate merchandise declared repugnant to the Constitution in *Stewart* v. *Michigan*, 232 U. S. 665; *Caldwell* v. *North Carolina*, 187 U. S. 622, and in *Rearick* v. *Pennsylvania*, 203 U. S. 507.

The rate or price received for the transportation and supply of the natural gas is the vital part of the transaction. Short of flat prohibition, there is no way to strike more directly at the heart of a commercial transaction than to fix the price that is to be received in it. See

*Brown* v. *Maryland,* 12 Wheat. 419, 447; *Leisy* v. *Hardin,* 135 U. S. 100, 108, 119–123; *Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311, 328, 329; *Lyng* v. *Michigan,* 135 U. S. 161, 166; *Bowman* v. *Chicago & Northwestern Ry. Co.,* 125 U. S. 465, 507; Judson on Interstate Commerce, § 17;   *West* v. *Kansas Natural Gas Co.,* 221 U. S. 255, 256.

The validity of state action does not rest upon the discretion or good judgment of the State, nor on the reasonableness of the regulation imposed.   It depends solely on the question of power.   *Brown* v. *Maryland,* 12 Wheat. 419, 439; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 27; *Railroad Commission* v. *Worthington,* 225 U. S. 101, 107.

Federal functions may not be usurped under the police power, nor does the occupancy of highways by the plaintiff in error under local franchises authorize the State to regulate the price of gas moving in interstate commerce. *Leisy* v. *Hardin,* 135 U. S. 100, 108, 119–123; *Lyng* v. *Michigan,* 135 U. S. 161–166; *Wabash, St. Louis & Pacific Ry. Co.* v. *Illinois,* 118 U. S. 557.

Substantially parallel to the pipe line of the plaintiff in error, between the City of Warren, Pa., and the City of Jamestown, N. Y., an interurban trolley system is operated.   This line is typical of many others, occupying city streets under local franchises.   The State will hardly assert that it is able to regulate the interstate business or interstate rates of such trolley lines under the police power or because of the use of local franchises.   The same rules and the same principles must be applied to the interstate business of the plaintiff in error.

This court has already held that the interstate gas business may not be regulated under the police power based on the use of highways.   *West* v. *Kansas Natural Gas Co.,* 221 U. S. 229.   See *Kansas Natural Gas Co.* v. *Haskell,* 172 Fed. Rep. 545.

The interstate natural gas business conducted by plaintiff in error is national, not local, in character, and the proposed state regulation thereof is not local in its operation. An interstate transaction requires national control whenever it is of such character that one State cannot control it without in effect extending its regulations into another State, or in effect assuming jurisdiction over property in another State, or leaving the transaction subject to conflicting regulations of different States.

The power of a State to enforce common-law duties, or like statutory duties, of public utilities engaged in interstate commerce does not extend to prescribing rates for interstate commerce. Subjecting interstate rates to control by a state commission is not the same as enforcing the common-law duty to serve at reasonable rates.

In fixing intrastate rates, for an interstate public utility, the State has no right to take into consideration the business of the company outside of the State, or base them on the value of the property outside the State. In fixing the gas rates in question, the State necessarily regulates the rate or return for the interstate transportation of the gas, and that is beyond its power.

*Mr. Ledyard P. Hale* for Public Service Commission, defendant in error.

*Mr. Louis L. Thrasher* for City of Jamestown *et al.,* defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

This writ of error brings before us for consideration the question whether the Public Service Commission of the State of New York has the power to regulate rates at which natural gas shall be furnished by the Pennsylvania Gas Company, plaintiff in error, to consumers in the city of Jamestown in the State of New York. The Court of

Appeals of New York (225 N. Y. 397) held that the Commission had such authority.

The statute of the State of New York, § 65, Public Service Commission Law, Laws 1910, c. 480, provides: "Every gas corporation, every electrical corporation and every municipality shall furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable. All charges made or demanded by any such gas corporation, electrical corporation or municipality for gas, electricity or any service rendered or to be rendered, shall be just and reasonable and not more than allowed by law or by order of the commission having jurisdiction. Every unjust or unreasonable charge made or demanded for gas, electricity or any such service, or in connection therewith, or in excess of that allowed by law or by the order of the commission is prohibited."

Consumers of gas, furnished by the plaintiff in error in the city of Jamestown, New York, filed a complaint demanding a reduction of gas rates in that city. The Public Service Commission asserted its jurisdiction which, as we have said, was sustained by the Court of Appeals of New York.

The federal question presented for our consideration involves the correctness of the contention of the plaintiff in error that the authority undertaken to be exercised by the Commission, and sustained by the court, was an attempt under state authority to regulate interstate commerce, and violative of the constitutional power granted to Congress over commerce among the States. The facts are undisputed. The plaintiff in error, the Pennsylvania Gas Company, is a corporation organized under the laws of the State of Pennsylvania and engaged in transmitting and selling natural gas in the State of New York and Pennsylvania. It transports the gas by pipe-lines about fifty miles in length from the source

of supply in the State of Pennsylvania into the State of
New York. It sells and delivers gas to consumers in the
city of Jamestown, in the town of Ellicott, and in the
village of Falconer, all in Chautauqua County, New York.
It also sells and delivers natural gas to consumers in the
cities of Warren, Corry and Erie in Pennsylvania.

We think that the transmission and sale of natural gas
produced in one State, transported by means of pipe-lines
and directly furnished to consumers in another State, is
interstate commerce within the principles of the cases
already determined by this court. *West* v. *Kansas Natu-
ral Gas Co.* 221 U. S. 229; *Haskell* v. *Kansas Natural Gas
Co.*, 224 U. S. 217; *Western Union Telegraph Co.* v. *Foster*,
247 U. S. 105.

This case differs from *Public Utilities Commission* v.
*Landon*, 249 U. S. 236, wherein we dealt with the piping
of natural gas from one State to another, and its sale to
independent local gas companies in the receiving State,
and held that the retailing of gas by the local companies
to their consumers was intrastate commerce and not a
continuation of interstate commerce, although the mains
of the local companies receiving and distributing the gas
to local consumers were connected permanently with
those of the transmitting company. Under the circum-
stances set forth in that case we held that the interstate
movement ended when the gas passed into the local
mains; that the rates to be charged by the local companies
had but an indirect effect upon interstate commerce and,
therefore, the matter was subject to local regulation.

In the instant case the gas is transmitted directly from
the source of supply in Pennsylvania to the consumers in
the cities and towns of New York and Pennsylvania,
above mentioned. Its transmission is direct, and without
intervention of any sort between the seller and the buyer.
The transmission is continuous and single and is, in our
opinion, a transmission in interstate commerce and there-

fore subject to applicable constitutional limitations which govern the States in dealing with matters of the character of the one now before us.

The general principle is well established and often asserted in the decisions of this court that the State may not directly regulate or burden interstate commerce. That subject, so far as legislative regulation is concerned, has been committed by the Constitution to the control of the Federal Congress. But while admitting this general principle, it, like others of a general nature, is subject to qualifications not inconsistent with the general rule, which now are as well established as the principle itself.

In dealing with interstate commerce it is not in some instances regarded as an infringment upon the authority delegated to Congress, to permit the States to pass laws indirectly affecting such commerce, when needed to protect or regulate matters of local interest. Such laws are operative until Congress acts under its superior authority by regulating the subject-matter for itself. In varying forms this subject has frequently been before this court. The previous cases were fully reviewed and deductions made therefrom in the *Minnesota Rate Cases*, 230 U. S. 352. The paramount authority of Congress over the regulation of interstate commerce was again asserted in those cases. It was nevertheless recognized that there existed in the States a permissible exercise of authority, which they might use until Congress had taken possession of the field of regulation. After stating the limitations upon state authority, of this subject, we said (p. 402): "But within these limitations there necessarily remains to the States, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. It extends to those matters of a local nature as to which it is impossible to derive from the constitutional grant an intention that they should go uncontrolled

pending Federal intervention. Thus, there are certain subjects having the most obvious and direct relation to interstate commerce, which nevertheless, with the acquiescence of Congress, have been controlled by state legislation from the foundation of the Government because of the necessity that they should not remain unregulated and that their regulation should be adapted to varying local exigencies; hence, the absence of regulation by Congress in such matters has not imported that there should be no restriction but rather that the States should continue to supply the needed rules until Congress should decide to supersede them. . . . Our system of government is a practical adjustment by which the National authority as conferred by the Constitution is maintained in its full scope without unnecessary loss of local efficiency. Where the subject is peculiarily one of local concern, and from its nature belongs to the class with which the State appropriately deals in making reasonable provision for local needs, it cannot be regarded as left to the unrestrained will of individuals because Congress has not acted, although it may have such a relation to interstate commerce as to be within the reach of the Federal power. In such case, Congress must be the judge of the necessity of Federal action. Its paramount authority always enables it to intervene at its discretion for the complete and effective government of that which has been committed to its care, and, for this purpose and to this extent, in response to a conviction of national need, to displace local laws by substituting laws of its own. The successful working of our constitutional system has thus been made possible."

The rates of gas companies transmitting gas in interstate commerce are not only not regulated by Congress, but the Interstate Commerce Act expressly withholds the subject from federal control. C. 309, § 7, 36 Stat. 539, 544.

The thing which the State Commission has undertaken to regulate, while part of an interstate transmis-

sion, is local in its nature, and pertains to the furnishing of natural gas to local consumers within the city of Jamestown in the State of New York. The pipes which reach the customers served are supplied with gas directly from the main of the company which brings it into the State, nevertheless the service rendered is essentially local, and the sale of gas is by the company to local consumers who are reached by the use of the streets of the city in which the pipes are laid, and through which the gas is conducted to factories and residences as it is required for use. The service is similar to that of a local plant furnishing gas to consumers in a city.

This local service is not of that character which requires general and uniform regulation of rates by congressional action, and which has always been held beyond the power of the States, although Congress has not legislated upon the subject. While the manner in which the business is conducted is part of interstate commerce, its regulation in the distribution of gas to the local consumers is required in the public interest and has not been attempted under the superior authority of Congress.

It may be conceded that the local rates may affect the interstate business of the company. But this fact does not prevent the State from making local regulations of a reasonable character. Such regulations are always subject to the exercise of authority by Congress enabling it to exert its superior power under the commerce clause of the Constitution.

The principles announced, often reiterated in the decisions of this court, were applied in the judgment affirmed by the Court of Appeals of New York, and we agree with that court that, until the subject-matter is regulated by congressional action, the exercise of authority conferred by the State upon the Public Service Commission is not violative of the commerce clause of the Federal Constitution.

*Affirmed.*