## CENTRAL TRUST CO. OF NEW YORK v. CONSUMERS' LIGHT, HEAT & POWER CO. (STATE OF KANSAS ex rel. HELM, Intervener).

(District Court, D. Kansas, First Division. June 15, 1922.)

### No. 75–N.

**Commerce &#9758;10—State cannot regulate price chargeable for gas by interstate pipe line company, though Congress has not acted.**

A state Public Utilities Commission cannot regulate the price chargeable local distributing companies for gas by one transporting the gas in interstate commerce by pipe line, and exercising no franchise rights acquired from the state, though Congress has not exercised its power of control over such rates.

In Equity. Receivership suit by the Central Trust Company of New York against the Consumers' Light, Heat & Power Company, in which G. J. Swan, receiver of the defendant company, sought an injunction against the Kansas Natural Gas Company, whereupon the State of Kansas, on relation of A. E. Helm, Attorney for the Public Utilities Commission for the State of Kansas, was permitted to intervene. Ruling against the intervener.

A. E. Helm, of Topeka, Kan., for Public Utilities Commission of Kansas.

H. O. Caster, S. N. Hawkes, and Robert C. Garver, all of Bartlesville, Okl., for Kansas Natural Gas Co.

Thomas F. Doran, of Topeka, Kan., for defendant.

POLLOCK, District Judge. The single question now presented to the court for decision in this suit is this, namely: Is the business done by the Kansas Natural Gas Company (hereinafter called the Natural Company) a Delaware corporation, engaged in the business of producing and buying natural gas, mostly in the state of Oklahoma, also in this state, and transporting the same through pipe lines in this state, and through this state into the state of Missouri, and delivering the same to distributing companies, to be delivered by said companies to their customers, in its nature such business as is under the control and subject to the regulation of the Public Utilities Commission of the state of Kansas in the matter of rates or price per 1,000 cubic feet which may be charged by the Natural Company for the gas so transported, sold, and furnished the distributing companies at the intake of said distributing companies' lines at the gates of the cities? This question arises and is now presented for determination in the following manner:

One G. J. Swan is the receiver, duly appointed, in the above entitled and numbered suit in this court, over the property and assets of defendant, the Consumers' Light, Heat & Power Company, a corporation created for the purpose of furnishing light, heat, and power to the city of Topeka and its inhabitants, in this state, and the adjoining town of Oakland. Said receiver was, through the gas system of defendant Light, Heat & Power Company engaged in the business of so furnishing

gas at the time this litigation arose. The only source of supply of natural gas which said receiver has or can procure is from the Natural Company. The rate fixed and price charged by the Natural Company prior to the 1st day of April, this present year, for gas furnished and delivered to said receiver at the city gate, was the sum of 35 cents per 1,000 cubic feet. However, on April 1st, said receiver was by the Natural Company notified, as follows:

"Kansas Natural Gas Company.
"Bartlesville, Oklahoma, April 1, 1922.

"Consumers' Light, Heat & Power Co., Topeka, Kansas—Gentlemen: You are hereby notified that on and after April, 1922, meter reading you will be charged at the rate of forty cents per thousand cubic feet for all gas delivered to you at the town border measuring station, gas to be computed on a temperature basis of 60 degrees Fahrenheit, and a pressure basis of eight ounces atmospheric pressure, atmospheric pressure being assumed to be 14.41 pounds per square inch.

"Very truly yours,    Kansas Natural Gas Co., by H. L. Montgomery."

This same proposed increase in rates from 35 to 40 cents per 1,000 cubic feet was made as to all cities and towns of this state, without presentation of the right to so do to the Public Utilities Commission of this state, or receiving any authority from that source. Thereupon the receiver of defendant Consumers' Light, Heat & Power Company filed in this suit his complaint, praying an injunction against the Natural Company, restraining said company from charging the proposed rate of 40 cents per 1,000 cubic feet, on the ground said rate was confiscatory, in view of the only rate it is by the Public Utilities Commission allowed to charge its customers.

Thereupon a restraining order was granted the receiver, and the Public Utilities Commission, through its solicitor, in the name of the state, intervened herein, praying an injunction against the Natural Company, restraining it from charging or collecting from any distributing company located in this state said increase in price of gas from 35 to 40 cents per 1,000 cubic feet, on the ground such proposed increase or charge for gas is unlawful and void, because not authorized by the Public Utilities Commission of this state. Thus is raised the issue of the power, jurisdiction, and control of the Public Utilities Commission of this state over the business done by the Natural Company within this state.

Coming, now, to the consideration of this question, it may be said: The Natural Company owns and exercises no franchise rights in this state, acquired from the state or any of its municipal bodies. It is a foreign corporation, owning a pipe line system, and is producing or purchasing natural gas in Oklahoma, this state, and transporting it from Oklahoma, into and through this state, into the state of Missouri, and delivering the same to some 40-odd local gas companies holding franchises from the several cities in which they are located for the distribution and sale of natural gas therein. In the transaction of its business the Natural Company is engaged solely and alone in interstate commerce business within this state, and does no local business whatever. This is conceded. The local companies, to which the Natural

Company sells its gas, do a purely local business; hence unquestionably are subject to the jurisdiction and control of the Public Utilities Commission of this state, so far as located within this state. The question, however, is as to that business which is transacted by the Natural Company. This question, I find, has been presented to and received consideration from the Supreme Court in the case of Public Utilities Commission v. Landon, 249 U. S. 236, 39 Sup. Ct. 268, 63 L. Ed. 577, wherein Mr. Justice McReynolds, delivering the opinion for the court, said, in speaking of the business conducted by the Natural Company, as follows:

"The court below held the business carried on by the receivers—transportation of natural gas and its disposition and sale to consumers through the distributing companies—was interstate commerce of a national character; that the commissions' actions interfered with establishment and maintenance of reasonable sale rates, and thereby burdened interstate commerce and took the receivers' property without due process of law; that the original supply contracts were not binding upon the receivers. And it accordingly enjoined the commissions, their members, the Attorneys General of both states, the various municipalities, and the distributing companies from interfering with establishment of such reasonable and compensatory rates as the court might approve. * * * That the transportation of gas through pipe lines from one state to another is interstate commerce may not be doubted. Also it is clear that as part of such commerce the receivers might sell and deliver gas so transported to local distributing companies free from unreasonable interference by the state. American Express Co. v. Iowa, 196 U. S. 133, 143; Oklahoma v. Kansas Natural Gas Co., 221 U. S. 229; Haskell v. Kansas Natural Gas Co., 224 U. S. 217. * * * Interstate commerce is a practical conception, and what falls within it must be determined upon consideration of established facts and known commercial methods. Rearick v. Pennsylvania, 203 U. S. 507, 512; The Pipe Line Cases, 234 U. S. 548, 560. The thing which the receivers actually did was to deliver supplies to local companies. Exercising franchise rights, the latter distributed and sold the commodity so obtained upon their own account, and paid the receivers what amounted to two-thirds of their receipts from customers. Interstate movement ended when the gas passed into local mains."

The business then being conducted by the receiver of the Natural Company differed from that now being conducted by the Natural Company, in the fact that the gas transported by the Natural Company in that case was turned over to and distributed by the local gas companies under divisional orders of proceeds; whereas, in the present case, the gas is sold outright and delivered to the distributing companies at the city gates. This fact more strongly disassociates the Natural Company from any local business whatever.

The case of Penna. Gas Co. v. Pub. Service Comm., 252 U. S. 23, 40 Sup. Ct. 279, 64 L. Ed. 434, is much relied upon by those insisting upon control of the business by the Public Utilities Commission. That was a case in which the Pennsylvania Company was engaged in both the interstate business of transporting natural gas from Pennsylvania into the state of New York for sale, and also, under certain franchise rights granted to it by the city of Jamestown, N. Y., was distributing and delivering the gas to its customers at the burners' tips in the city. Mr. Justice Day, delivering the opinion of the court, and distinguishing that case from the Landon Case, said:

"We think that the transmission and sale of natural gas produced in one state, transported by means of pipe lines and directly furnished to consumers in another state, is interstate commerce within the principles of the cases already determined by this court. West v. Kansas Natural Gas Co., 221 U. S. 229; Hackell v. Kansas Natural Gas Co., 224 U. S. 217; Western Union Telegraph Co. v. Foster, 247 U. S. 105. This case differs from Public Utilities Commission v. Landon, 249 U. S. 236, wherein we dealt with the piping of Natural Gas from one state to another, and its sale to independent local gas companies in the receiving state, and held that the retailing of gas by the local companies to their consumers was intrastate commerce and not a continuation of interstate commerce, although the mains of the local companies receiving and distributing the gas to local consumers were connected permanently with those of the transmitting company. Under the circumstances set forth in that case, we held that the interstate movement ended when the gas passed into the local mains; that the rates to be charged by the local companies had but an indirect effect upon interstate commerce, and therefore the matter was subject to local regulation."

Now, the contention of those here seeking to have the business of the Natural Company controlled by the Public Utilities Commission of the state under state laws is this: As the federal government has not attempted to exercise that exclusive control over the interstate business of the Natural Company which the commerce clause of the federal Constitution confers upon it, therefore the state, through its Public Utilities Commission, may exercise that control so conferred on the government under the commerce clause until the federal government takes over such control. However, it is quite well settled by authority, although the business transacted be in its essential nature interstate, yet, so long as the general government has not exercised its power conferred to regulate such commerce, the state may in incidental ways and manners impress restrictions upon interstate commerce. This is no place more aptly stated than by Mr. Justice Day in distinguishing the Landon Case from the Pennsylvania Gas Case then at bar, in which it is said as follows:

"The general principle is well established and often asserted in the decisions of this court that the state may not directly regulate or burden interstate commerce. That subject, so far as legislative regulation is concerned, has been committed by the Constitution to the control of the federal Congress. But, while admitting this general principle, it, like others of a general nature, is subject to qualifications not inconsistent with the general rule, which now are as well established as the principle itself. In dealing with interstate commerce, it is not in some instances regarded as an infringement upon the authority delegated to Congress to permit the states to pass laws indirectly affecting such commerce, when needed to protect or regulate matters of local interest. Such laws are operative until Congress acts under its superior authority by regulating the subject-matter for itself. In varying forms this subject has frequently been before this court. The previous cases were fully reviewed and deductions made therefrom in the Minnesota Rate Cases, 230 U. S. 352. The paramount authority of Congress over the regulation of interstate commerce was again asserted in those cases. It was nevertheless recognized that there existed in the states a permissible exercise of authority, which they might use until Congress had taken possession of the field of regulation," etc.

However, the control which the Public Utilities Commission of the state here asserts over the business done by the Natural Company within this state is in no sense, manner, or way incidental in its nature under the law creating the commission, but is full, absolute, and com-

plete regulation and control over the interstate business of the Natural Company, precisely the same in its nature as it holds and exercises over the business of the local distributing companies, even to the extent of establishing the prices to be charged for what it transports into the state in interstate commerce and here sells at wholesale prices. It has been often declared no more complete control can be exercised over interstate business. See Heyman v. Hays, 236 U. S. 178, 35 Sup. Ct. 403; The Pipe Line Cases, 234 U. S. 548, 34 Sup. Ct. 956, 58 L. Ed. 1459; Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; American Express Co. v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49, and many other cases.

From all of which I am persuaded beyond doubt, so long as we have the guaranty of protection afforded and intended to be afforded by the framers of our national Constitution against the complete regulation and control of purely interstate commerce under the commerce clause of the Constitution, such regulation as is here sought by the state through its Public Utilities Commission over the purely interstate business of the Natural Company cannot and should not be permitted.

It follows the power and control attempted to be exercised by the state through its Public Utilities Commission over the interstate business of the Natural Company must be denied, and is denied.