STATE OF MISSOURI ON THE RELATION OF
BARRETT, ATTORNEY GENERAL, ET AL. *v.*
KANSAS NATURAL GAS COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF MISSOURI.

KANSAS NATURAL GAS COMPANY *v.* STATE OF
KANSAS ON THE RELATION OF HELM, AT-
TORNEY FOR THE PUBLIC UTILITIES COM-
MISSION OF THE STATE OF KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

STATE OF KANSAS ON THE RELATION OF JACK-
SON, ATTORNEY FOR THE PUBLIC UTILITIES
COMMISSION OF THE STATE OF KANSAS, ETC.
*v.* CENTRAL TRUST COMPANY OF NEW YORK
ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF KANSAS.

Nos. 155, 133 and 137.  Argued April 21, 1924.—Decided May 26,
1924.

1. The business of piping natural gas from one State to another and
selling it, not to consumers, but to independent distributing com-
panies which sell it locally to the consumers, is interstate com-
merce free from state interference. *Pennsylvania Gas Co.* v. *Pub-
lic Service Comm.*, 252 U. S. 23, distinguished.  P. 307.
2. An attempt of a State to fix the rates chargeable in this inter-
state business is a direct burden on interstate commerce, even in
the absence of any regulation of it by Congress.  P. 308.
282 Fed. 341, (No. 155) affirmed.
111 Kans. 809, (No. 133) reversed.
282 Fed. 680, (No. 137) affirmed.

IN the first of these cases the appellants sought to
enjoin the Kansas Natural Gas Company from increasing

its rates in Missouri without the consent of the Public Utilities Commission of that State. The decree of the District Court refusing the injunction is here affirmed.

In the second case the Kansas Supreme Court allowed a peremptory mandamus to compel the same company to reëstablish and maintain certain rates in Kansas until otherwise ordered by the Utilities Commission of that State. Reversed.

The third case was a suit in the federal court in Kansas to enjoin collection by the same company of increased rates in Kansas until allowed by the Kansas Utilities Commission. The injunction was denied. Affirmed.

*Mr. J. W. Dana* and *Mr. Frank E. Atwood,* with whom *Mr. L. H. Breuer* was on the brief, for appellants in No. 155.

I. The public welfare requires that the Kansas Natural Gas Company be regulated.

II. The Kansas Natural Gas Company is a public utility at common law. *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Terminal Taxicab Co.* v. *District of Columbia,* 241 U. S. 252; *San Joaquin Co.* v. *Stanislaus County,* 233 U. S. 454.

III. The Kansas Natural Gas Company is declared by statutes to be a public utility.

IV. Interstate commerce in natural gas is local in its nature, is peculiarly of local concern, makes provision for local needs, pertains to local public service, and is subject to reasonable state regulation.

The record shows that the Supply Company has a complete monopoly of the supply of natural gas to some forty cities, towns and villages in Eastern Kansas and Western Missouri, and serves one-half million people; that the distributing companies have no other source of supply of natural gas; that the primary undertaking and duty of the Supply Company is to furnish natural gas. It is

immaterial where that gas comes from. The duty, bottomed on the original supply-contracts maintained by the Receivers while the business was *in custodia legis* and continued by the Supply Company since, was to furnish natural gas. The furnishing is local to the Kansas City Gas Company and other distributing companies and at Kansas City and some forty other cities and communities served. It is for the inhabitants of the cities served as distinguished from the public at large. It " makes provision for local needs " by undertaking the supply of gas provided for in local natural gas franchise ordinances, granted to distributing companies; and "pertains to a local public service." It is delivered to and through the instrumentality of local licensed agencies, public service companies of the States.

This natural gas is so peculiarly local in its nature and restricted in its uses and method of handling, that it can not be reconsigned and transported on past the points of delivery to some other market but must be sold and consumed, if at all, in a comparatively restricted area.

Permanent physical connections are made and must be maintained between the plant and pipe line system of the Supply Company and the public service companies served.

Local measuring stations and meters are and must be maintained and operated at or within the town borders of the cities served, where the gas is continuously delivered and sold by the Supply Company to meet the consumers' instantaneous demands upon the distributing companies.

The Supply Company occupies the public highways of the States and exercises the power of eminent domain, and occupies the public streets at the point of delivery, with the license or acquiescence of the cities, towns and villages served.

There are no advance orders for natural gas but it is delivered " instanter " as required by the customers, singly

and in aggregate. The Supply Company offers service to all consumers, distributing companies, cities and towns on its lines who apply.

It has and makes no special contracts with any consumer or distributing company. Its original gas-supply-contracts were at its own suit annulled and set aside as to rates, but the service established under those contracts continues in full force and effect and it accepts the benefits and fruits of that business. It furnishes and sells natural gas not under private negotiation and contract, but upon promulgated and published schedules of uniform rates.

The foregoing facts of record clearly bring this case within the class of cases local in their nature and subject to state regulation as laid down in *Pennsylvania Gas Co.* v. *Public Service Comm.,* 252 U. S. 23.

The character and classification of commerce, whether interstate or intrastate, national or local, is not determined or affected by the change of carriers. *Texas & New Orleans R. R. Co.* v. *Sabine Tram Co.,* 227 U. S. 111; *South Covington Ry. Co.* v. *Covington,* 235 U. S. 537; *Atchison, etc. Ry. Co.* v. *Harold,* 241 U. S. 371.

It is equally well settled that such classification of commerce is not determined upon the basis of ownership or change of title of the commodity in transit. *Swift & Co.* v. *United States,* 196 U. S. 375; *Gulf, etc. Ry. Co.* v. *Texas,* 204 U. S. 403; *Atchison, etc. Ry. Co.* v. *Harold, supra.* See particularly *North Carolina Pub. Serv. Comm.* v. *Southern Power Co.,* 282 Fed. 837.

There is a line of analogous liquor cases which establish the principle that before the Supply Company can successfully claim that the business of furnishing and selling natural gas shipped interstate is free from state control, it must show that sales take place or are confirmed or consummated in the foreign State, and that it is not locally selling and locally delivering gas to meet

the immediate, instantaneous, simultaneous and indiscriminate demands of its customers or its customers' customers. *Heyman* v. *Hays,* 236 U. S. 178; *In re Rahrer,* 140 U. S. 545; *McDermott* v. *Wisconsin,* 228 U. S. 115.

The Supply Company's business is not capable of one uniform system of regulation. *State* v. *Flannelly,* 96 Kans. 372; *Manufacturers' Light & Heat Co.* v. *Ott,* 215 Fed. 940; *Jamieson* v. *Indiana Natural Gas Co.,* 128 Ind. 555; *Mill Creek Coal Co.* v. *Public Service Comm.,* 84 W. Va. 662.

The fixing of natural gas rates is the fixing of commodity rates—selling rates of a commodity locally. It must of necessity vary in each city served, depending upon the volume of business done, the character and classification of consumers and numerous other factors entering into and reflected in commodity prices. Transportation is a mere incident. *Mill Creek Coal Co.* v. *Public Service Comm., supra.*

The maintenance of the Supply Company's supply of gas within the city, its pipe lines in and upon the city's streets and its meters within or near the city, continuously ready to serve, constitutes an implied standing offer to deliver, measure and sell locally at reasonable and authorized rates; the turning of the consumers' burner cocks and the drawing of the gas from the mains of the distributing company, and in turn the delivery of the gas by the Supply Company into the mains of the distributing company, constitutes an acceptance of that offer and an implied promise to pay a reasonable or authorized city gates' rate. These entire transactions are purely local.

V. The specific exclusion of interstate commerce in natural gas from the Interstate Commerce Act, implies regulation by the States until Congress acts.

VI. An importer who employs a licensed agency of the State, a public utility, to sell and market products

shipped interstate, thereby consents to reasonable state regulation.

The Supply Company is and ever will be under the necessity of using and employing licensed agencies of the States, public utilities having franchises, to market its imports. Such an importer is not engaged in interstate commerce of a national character, but is engaged in local trade and traffic subject to state regulation. *Brown* v. *Maryland,* 12 Wheat. 419, 443.

The furnishing of gas to the inhabitants of the city is a state function kindred to building roads and paving streets over which the State alone has control. *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477; *Field* v. *Barber Asphalt Co.,* 194 U. S. 618.

The *reductio ad absurdum* of the Supply Company's claim is, that its right to import gas carries with it the unrestricted right not only to raise and lower its rates but, at its own will and caprice, to supply or refuse to supply gas, and to change its quality, and quantity and its service as to some forty public service corporations and forty or more cities, towns and villages, and one-half million people; for, if the State has no power to regulate the rates, it has none to regulate the quality or character of service or to determine the use of gas, or to exclude such use altogether.

VII. The decision in *Public Utilities Comm.* v. *Landon,* 249 U. S. 236, turned on the point that the Receiver had no cause of action for the reason that his rates were at that time consent rates, or fixed by contract, and the challenged rates, then before this Court, were made for distributing companies and not for the Receiver. It is no authority for the contention that the Kansas Natural Gas Company was then or is at this time, on the record now before this Court, free from state regulation.

VIII. A public utility, or one conducting a business affected with the public interest, may not arbitrarily dis-

continue service for the non-payment of a controverted bill. Injunction will issue to prevent such wrongful act.

IX. If the Kansas Natural Gas Company's rates are not subject to regulation, it is bound by contract, express and implied; first, to continue service until, after notice, a substitute can be provided; and second, at rates agreed upon.

*Mr. Robert D. Garver,* with whom *Mr. Herbert O. Caster* and *Mr. Richard J. Higgins* were on the briefs, for the Kansas Natural Gas Company, appellee in Nos. 155 and 137, and plaintiff in error in No. 133.

*Mr. Fred S. Jackson* for defendant in error in No. 133.

The Gas Company is a public utility under the laws of Kansas. Laws 1911, c. 238, § 3; *Cimarron* v. *Water, Light & Ice Co.,* 110 Kans. 812.

The sale of natural gas is local in its nature. *State* v. *Flannelly,* 96 Kans. 372; *State* v. *Gas Company,* 100 Kans. 593; *North Carolina Pub. Serv. Comm.* v. *Southern Power Co.,* 282 Fed. 837.

The rates charged by the gas company to the distributing companies at the gates of the cities are subject to regulation by the Public Utilities Commission. *Pennsylvania Gas Co.* v. *Public Service Comm.,* 252 U. S. 23; s. c. 184 App. Div. 556; 225 N. Y. 397.

This Court, in the *Pennsylvania Gas Co. Case,* has expressly held that the State may regulate the sale of natural gas in interstate commerce where it is of a local nature. The sale of natural gas by the defendant to the distributing companies in no way differs from the sale by that company to cities, industries or large consumers of gas. In either case it is interstate commerce of a local nature which has not been regulated by Congress, and the principles of law which are applied to the interstate commerce at the burners' tips in the *Pennsylvania Gas*

*Co. Case* are equally applicable to the sale of gas measured by the flow meters to the distributing companies in Kansas.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

These cases were consolidated for argument. They present for decision the single question whether the business of the Kansas Natural Gas Company, hereinafter called the Supply Company, consisting of the transportation of natural gas from one State to another for sale, and its sale and delivery, to distributing companies, is interstate commerce free from state interference?

The facts necessary to be considered in reaching a conclusion are, shortly, as follows:

The Supply Company is a Delaware corporation, engaged in producing and buying natural gas, mostly in Oklahoma but some in Kansas, and, by means of pipe lines, transporting it into Kansas and from Kansas into the State of Missouri, and in each State selling and delivering it to distributing companies, which then sell and deliver it to local consumers in numerous communities in Kansas and Missouri. The gas originating in Kansas is mingled for transportation in the same lines with that originating in Oklahoma. The pipe lines are continuous from the wells to the place of delivery.

The three cases are alike in the fact that they arise from the action of the Supply Company in making an increase of rates from thirty-five cents to forty cents per thousand cubic feet,—in Missouri, without the consent and approval of the Public Utilities Commission of the State, and, in Kansas, notwithstanding a previous order of the federal court fixing a thirty-five-cent rate and the action of the Utilities Commission approving and fixing that rate. The power of the Utilities Commission of each State is challenged on the ground that the matter, under

the commerce clause of the Constitution, is not subject to state control.

In No. 155, appellants brought suit in the Federal District Court to enjoin the Supply Company from increasing its rates. The injunction prayed was denied. 282 Fed. 341.

In No. 133, the defendant in error filed a petition in the Kansas Supreme Court for a writ of mandamus to compel the Supply Company to reestablish and maintain the rate of thirty-five cents per thousand cubic feet for gas furnished to the distributing companies, until otherwise ordered by the Utilities Commission. The case was presented to that court on demurrer to the return and answer. The demurrer was sustained and a peremptory writ of mandamus allowed, as prayed. 111 Kans. 809.

In No. 137, the suit was to enjoin the Supply Company from collecting or attempting to collect the increased rates from various gas distributing companies until the consent thereto of the Utilities Commission of the State should be secured. The Federal District Court denied the injunction but retained the bill for another purpose, not necessary to be stated. 282 Fed. 680.

The business of the Supply Company, with an exception not important here, is wholly interstate. The sales and deliveries are in large quantities not for consumption but for resale to consumers. There is no relation of agency between the Supply Company and the distributing companies, or other relation except that of seller and buyer, *Public Utilities Comm.* v. *Landon,* 249 U. S. 236, 244–245; and the interest of the former in the commodity ends with its delivery to the latter, to which title and control thereupon pass absolutely. The question is, therefore, presented in its simplest form; and if the claim of state power be upheld, it is difficult to see how it could be denied in any case of interstate transportation and sale of gas. Both federal courts denied the power. The state

court conceded that the business was interstate and subject to federal control, but rested its decision the other way upon the fact that Congress had not acted in the matter and that, in the absence of such action, it was within the regulating power of the State. The question is controlled by familiar principles. Transportation of gas from one State to another is interstate commerce; and the sale and delivery of it to the local distributing companies is a part of such commerce. In *Public Utilities Comm.* v. *Landon, supra,* at p. 245, this Court said: " That the transportation of gas through pipe lines from one State to another is interstate commerce may not be doubted. Also, it is clear that as part of such commerce the receivers might sell and deliver gas so transported to local distributing companies free from unreasonable interference by the State." See *Pennsylvania* v. *West Virginia,* 262 U. S. 553, 596, and cases there cited.

The line of division between cases where, in the absence of congressional action, the State is authorized to act, and those where state action is precluded by mere force of the commerce clause of the Constitution, is not always clearly marked. In the absence of congressional legislation, a State may constitutionally impose taxes, enact inspection laws, quarantine laws and, generally, laws of internal police, although they may have an incidental effect upon interstate commerce. *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477, 488–491. But the commerce clause of the Constitution, of its own force, restrains the States from imposing direct burdens upon interstate commerce. In *Minnesota Rate Cases,* 230 U. S. 352, 396, Mr. Justice Hughes, speaking for the Court, said: " If a state enactment imposes a *direct burden* upon interstate commerce, it must fall regardless of Federal legislation. The point of such an objection is not that Congress has acted, but that the State has directly re-

strained that which in the absence of Federal regulation should be free." The question is so fully discussed in that case, that nothing beyond its citation is required.

The contention that, in the public interest, the business is one requiring regulation, need not be challenged. But Congress thus far has not seen fit to regulate it, and its silence, where it has the sole power to speak, is equivalent to a declaration that that particular commerce shall be free from regulation. See *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 493. With the delivery of the gas to the distributing companies, however, the interstate movement ends. Its subsequent sale and delivery by these companies to their customers at retail is intrastate business and subject to state regulation. *Public Utilities Comm.* v. *Landon, supra*, p. 245. In such case the effect on interstate commerce, if there be any, is indirect and incidental. But the sale and delivery here is an inseparable part of a transaction in interstate commerce—not local but essentially national in character,— and enforcement of a selling price in such a transaction places a direct burden upon such commerce inconsistent with that freedom of interstate trade which it was the purpose of the commerce clause to secure and preserve. It is as though the Commission stood at the state line and imposed its regulation upon the final step in the process at the moment the interstate commodity entered the State and before it had become part of the general mass of property therein. See *Brown* v. *Houston*, 114 U. S. 622, 634. There is nothing in *Pennsylvania Gas Co.* v. *Public Service Comm.*, 252 U. S. 23, inconsistent with this view. There the Gas Company, a Pennsylvania corporation, transmitted gas from Pennsylvania into New York and sold it directly to the consumers. The service to the consumers, which was the theory for which the regulated charge was made, was essentially local and the decision rests upon this feature. Mr. Justice Day, in the

course of the opinion, said (p. 31): " The pipes which reach the customers served are supplied with gas directly from the main of the company which brings it into the State, nevertheless the service rendered is essentially local, and the sale of gas is by the company to local consumers who are reached by the use of the streets of the city in which the pipes are laid, and through which the gas is conducted to factories and residences as it is required for use. The service is similar to that of a local plant furnishing gas to consumers in a city." The commodity, after reaching the point of distribution in New York was subdivided and sold at retail. The *Landon Case,* so far as this phase is concerned, differs only in the fact that the process of division and sale to consumers was carried on, not by the supply company, but by independent distributing companies.

In both cases the things done were local and were after the business in its essentially national aspect had come to an end. The distinction which constitutes the basis of the present decision is clearly recognized in the *Landon Case.* The business of supplying, on demand, local consumers is a local business, even though the gas be brought from another State and drawn for distribution directly from interstate mains; and this is so whether the local distribution be made by the transporting company or by independent distributing companies. In such case the local interest is paramount, and the interference with interstate commerce, if any, indirect and of minor importance. But here the sale of gas is in wholesale quantities, not to consumers, but to distributing companies for resale to consumers in numerous cities and communities in different States. The transportation, sale and delivery constitute an unbroken chain, fundamentally interstate from beginning to end, and of such continuity as to amount to an established course of business. The paramount interest is not local but national, admitting of and requiring

uniformity of regulation. Such uniformity, even though it be the uniformity of governmental nonaction, may be highly necessary to preserve equality of opportunity and treatment among the various communities and States concerned. See, for example: *Welton* v. *Missouri*, 91 U. S. 275, 282; *Hall* v. *DeCuir*, 95 U. S. 485, 490.

That some or all of the distributing companies are operating under state or municipal franchises cannot affect the question. It is enough to say that the Supply Company is not so operating and is not made a party to these franchises by merely doing business with the franchise holders.

*No. 155 Affirmed.*
*No. 133 Reversed.*
*No. 137 Affirmed.*