969 F.2d 1215
 297 U.S.App.D.C. 215
 MISSISSIPPI RIVER TRANSMISSION CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Laclede Gas Company, Florida Gas Transmission Company,
Illinois Power Company, Interstate Natural Gas
Association of America, Intervenors.
 No. 91-1164.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 21, 1992.
Decided July 21, 1992.
 
 Carolyn Y. Thompson, with whom Donald B. Ayer, John E. Benedict, Juanita Feigenbaum and Thomas M. Byrne, were on the brief, for petitioner.
 Jerome M. Feit, Sol., and Jill Hall, Atty., F.E.R.C., with whom William S. Scherman, Gen. Counsel, and Joseph S. Davies, Deputy Sol., were on the brief, for respondent.
 John H. Cheatham, III, Jean E. Sonneman and Brian D. O'Neill, for Interstate Natural Gas Ass'n of America, and Sherrie N. Rutherford, Steven J. Kean and David B. Ward, for Florida Gas Transmission Co., were on the joint brief for intervenors. Martin J. Marz also entered an appearance for intervenors.
 Kenneth J. Neises entered an appearance, for intervenor Laclede Gas Co.
 Frederick J. Killion and Donald K. Dankner entered appearances, for intervenor Illinois Power Co.
 Before: RUTH BADER GINSBURG, SENTELLE, and RANDOLPH, Circuit Judges.
 Opinion for the court filed by Circuit Judge RANDOLPH.
 RANDOLPH, Circuit Judge:
 
 
 1
 Section 1(b) of the Natural Gas Act of 1938, 15 U.S.C. § 717(b), confers authority on the Federal Energy Regulatory Commission to regulate three subjects: " the transportation of natural gas in interstate commerce, ... the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and ... natural-gas companies engaged in such transportation or sale...."[1] See Panhandle Eastern Pipe Line Co. v. Public Serv. Comm'n, 332 U.S. 507, 516, 68 S.Ct. 190, 195, 92 L.Ed. 128 (1947). When a pipeline sells gas to an industrial customer for the customer's own use and consumption--a "direct sale"--FERC cannot regulate the sale, although state authorities may. When a pipeline transports gas in interstate commerce, FERC may regulate the transportation. What is the extent of FERC's authority when a pipeline simultaneously does both, that is, when it transports gas for direct sale in interstate commerce, charging one price for this "bundled" service?
 
 
 2
 The issue arises as follows. Pipelines of petitioner Mississippi River Transmission Corporation (MRT) transport natural gas [297 U.S.App.D.C. 217] from wellheads in Texas, Oklahoma, and Louisiana to customers in Missouri, Illinois, Arkansas, and Louisiana. Often MRT sells the gas it transports, sometimes for its customers' use, sometimes for resale to the public. In October 1989, the pipeline applied, pursuant to section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c), for a certificate of public convenience and necessity to increase firm, or top priority, sale (and transportation) service to one sale-for-resale and one direct sale customer. MRT also sought permission to convert four direct sale customers from interruptible to firm service. FERC approved the application subject to several conditions. See 15 U.S.C. § 717f(e). One was that "[t]he transportation component of the rate for the authorized direct sale service may not be less than the applicable maximum rate for firm transportation service pursuant to Mississippi River's open-access transportation tariff." Mississippi River Transmission Corp., 51 F.E.R.C. p 61,188, at 61,516 (1990). FERC imposed this condition, it explained, for the purpose of preventing MRT from offering direct sales on a basis that "would unduly prefer the pipeline's sales over its transportation services." Id.
 
 
 3
 We shall deal later with the sufficiency of FERC's reasons for imposing the condition. The initial question is whether section 1(b) empowered FERC to act.[2]
 
 
 4
 * FERC is not barred from regulating a pipeline's interstate transportation of natural gas merely because the sale of the gas being transported is not itself subject to federal regulation. FERC's authority over such transactions is beyond dispute. See FPC v. East Ohio Gas Co., 338 U.S. 464, 468, 70 S.Ct. 266, 268, 94 L.Ed. 268 (1950). MRT therefore had to obtain from FERC a certificate of public convenience and necessity before going forward. For this reason, MRT's objection is not that FERC was entirely precluded from regulating this transaction. It is rather that FERC's section 1(b) authority to regulate the transaction does not extend to setting a minimum charge for transporting the gas--which MRT describes as the equivalent of FERC's setting a rate for a direct sale, a subject outside of section 1(b).
 
 
 5
 We detect nothing in section 1(b) that would compel MRT's characterization of FERC's order. The agency did not so view it; FERC specifically disclaimed any intention to "fix[ ] rates for the direct sale of gas." Mississippi River Transmission Corp., 54 F.E.R.C. p 61,122, at 61,411 (1991). The order, FERC said, only mandates a "minimum rate for the transportation component" of the service; MRT still [297 U.S.App.D.C. 218] remains free to "charge any direct sales rate it wishes" on top of the transportation rate. Id. As far as the statute is concerned, there would have been no doubt of FERC's section 1(b) authority if MRT, instead of charging a bundled price, had charged separately for transporting the gas and for the gas itself. To accept MRT's position would therefore be tantamount to conferring on private parties the power to decide whether FERC could set the rate for interstate transportation. Private parties would have this power because it would be entirely up to them whether to structure a direct sale and interstate-transportation transaction in terms of a bundled price or separate charges. But see Order No. 636, 57 Fed.Reg. 13,267, 13,270 (Apr. 16, 1992). Thus, as FERC sees it, the only relevant question must be whether the condition it imposed was directed at a proper subject of regulation.
 
 
 6
 MRT thinks the proviso in section 1(b) supports its position, but we cannot see how. After specifying the three subjects FERC may regulate, section 1(b) states that the provisions of the Act "shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas." There is nothing in this language to suggest that Congress intended to limit FERC's ability to regulate the subjects within its jurisdiction. According to the House Report, adopted by the Senate, the proviso is
 
 
 7
 not actually necessary, as the matters specified therein could not be said fairly to be covered by the language affirmatively stating the jurisdiction of the Commission, but similar language was in previous bills, and, rather than invite the contention, however unfounded, that the elimination of the negative language would broaden the scope of the act, the committee has included it in this bill.
 
 
 8
 H.R.REP No. 709, 75th Cong., 1st Sess. 3 (1937); see also S.REP. No. 1162, 75th Cong., 1st Sess. 3 (1937). As applied to this case, the passage just quoted suggests that FERC has jurisdiction over the transportation in interstate commerce of natural gas and no more, which in turn suggests that FERC's authority over transportation is not limited in the manner MRT urges.
 
 
 9
 The same conclusion follows from the Supreme Court's pronouncements regarding section 1(b). The Court has several times considered the border between state and federal regulation. Stressing that the Natural Gas Act was " 'meant to create a comprehensive and effective regulatory scheme,' " the Court has asked "whether state authority can practicably regulate a given area." FPC v. Transcontinental Gas Pipe Line Corp., 365 U.S. 1, 19, 81 S.Ct. 435, 445, 5 L.Ed.2d 377 (1961) [hereinafter Transco ] (quoting Panhandle Eastern Pipe Line Co., 332 U.S. at 520, 68 S.Ct. at 197); see FPC v. Louisiana Power & Light Co., 406 U.S. 621, 640-41, 92 S.Ct. 1827, 1838-39, 32 L.Ed.2d 369 (1972); East Ohio Gas Co., 338 U.S. at 471-72, 70 S.Ct. at 270-71. Here the answer is relatively clear. States cannot as effectively regulate the interstate transportation of gas bundled for direct sale to customers for the simple reason that the primary concern of state regulators is the interests of their state's citizens, who doubtless would prefer to pay less for transportation than those outside the state. (Concerns of the same sort underlie many of the Court's dormant commerce clause decisions. See, e.g., Missouri v. Kansas Natural Gas Co., 265 U.S. 298, 310, 44 S.Ct. 544, 546, 68 L.Ed. 1027 (1924); Pennsylvania Gas Co. v. Public Serv. Comm'n, 252 U.S. 23, 31, 40 S.Ct. 279, 281, 64 L.Ed. 434 (1920).) Thus, as in Transco, "[t]he very nature of the present problem, entailing as it does considerations that overstep the bounds of any one State, illustrates the improbability that state commissions could or would attempt to deal with it; it seems clear that considerations of this sort are uniquely fitted for federal scrutiny." Transco, 365 U.S. at 27, 81 S.Ct. at 449.
 
 
 10
 MRT asserts that by regulating the transportation component of bundled, direct sale service, FERC will "emasculate" state authority over direct sales. We do not understand why. The condition FERC imposed here is scarcely as devastating as [297 U.S.App.D.C. 219] MRT makes out. FERC has merely required MRT to charge its customers the maximum rate under its open access certificate, a rate reflecting the full cost of its transportation services. 18 C.F.R. § 284.7(d)(4)(i). State officials remain free to regulate the rate MRT charges to recover the cost of the gas it sells. It is, of course, possible that FERC might set a transportation rate so high that its regulation will effectively set the bundled rate as well. But the "fact that a power can be perverted does not mean that every exercise of the power is a perversion of the power." Murdock v. Pennsylvania, 319 U.S. 105, 137, 63 S.Ct. 870, 900, 87 L.Ed. 1292 (1943) (Frankfurter, J., dissenting). FERC's interpretation of section 1(b) does not, in any event, give it absolute discretion over the rate for the transportation component. Under section 7(e) of the Act, FERC may attach only reasonable conditions to the issuance of certificates. 15 U.S.C. § 717f(e). If FERC were to condition a certificate on the pipeline's charging a rate for the transportation component so high that it would, in effect, fix the rate for the bundled service as a whole, the pipeline would be able to attack the condition as unreasonable--as MRT has done here. See infra p. 1220.
 
 
 11
 Quoting from Transco, intervenors Florida Gas Transmission Company and the Interstate Natural Gas Association of America contend that, when a direct sale is involved, FERC may "only exercise a veto power over the proposed transportation." 365 U.S. at 17, 81 S.Ct. at 444. They have taken this language, which the Court borrowed from a law review article (Koplin, Conservation and Regulation: The Natural Gas Allocation Policy of the Federal Power Commission, 64 YALE L.J. 840, 862 (1955)), out of context. The issue in Transco was whether FERC's predecessor could consider the end use to which gas would be put. Recognizing that the agency lacked comprehensive power over conservation and that it could not ban all direct sales for use under industrial boilers, the Court nonetheless found that it could consider how end use affects the public interest and convenience. In the passage from which the intervenors quote, the Court explained that this distinction between consideration of conservation as a factor and complete allocation power reflects FERC's limited powers under section 7 of the Act: "The Commission cannot order a natural gas company to sell gas to users it favors; it can only exercise a veto power over proposed transportation and it can only do this when a balance of all the circumstances weighs against certification." 365 U.S. at 17, 81 S.Ct. at 444 (footnote omitted). Nothing in this passage deals with the agency's conditioning power; the agency had not imposed any conditions in Transco. Moreover, if we were to accept intervenors' reading, we would have to suppose that the Court meant to nullify section 7(e) of the Act, 15 U.S.C. § 717f(e), which confers upon FERC "the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."[3]
 
 
 12
 FERC has adopted a straightforward reading of section 1(b) amply supported by forty years of Supreme Court decisions.[4] See Maislin Indus., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, ---, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990). Regardless of whether MRT's alternative is plausible, which we doubt, its interpretation [297 U.S.App.D.C. 220] must be rejected because MRT has not shown the agency's construction to be unreasonable. We therefore must defer to the agency's interpretation of the statute Congress entrusted to its administration, see generally Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), although we need not go so far as to say that FERC's reading of section 1(b) is compelled. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 & n. 11, 104 S.Ct. 2778, 2781-82 & n. 11, 81 L.Ed.2d 694 (1984).
 
 II
 
 13
 Apart from its challenge to FERC's interpretation of section 1(b), MRT insists that the condition FERC imposed is unreasonable. The condition requires MRT to charge its direct sale customers no less than the maximum rate in its open access transportation tariff for the transportation component of its service--ostensibly to prevent MRT from unduly preferring those customers over its regular transportation or "open access" customers. Mississippi River Transmission Corp., 51 F.E.R.C. at 61,156. In its petition for rehearing, MRT contended that many of its competitors are not subject to such restrictions. Some are intrastate pipelines, and the states regulating them may allow them to discount their transportation services freely. Others are suppliers; they can negotiate selective discounts on their transportation costs from pipelines holding open access certificates. (Pipelines holding open access certificates can offer a range of transportation rates, from a maximum of their "fully allocated" rate down to a minimum reflecting their average variable cost. 18 C.F.R. §§ 284.7(a)(4)(ii), 284.7(d)(5)(ii); see generally ANR Pipeline Co. v. FERC, 876 F.2d 124, 127-28 (D.C.Cir.1989).) But for FERC's condition, MRT could--subject to any state regulation--discount its transportation costs as well. As a consequence, MRT asserted, FERC's condition places it at a competitive disadvantage and is, therefore, inconsistent with the policies implicit in recent FERC rules like Order No. 436, 50 Fed.Reg. 42,408 (1985), vacated in part and remanded sub nom. Associated Gas Distribs. v. FERC, 824 F.2d 981 (D.C.Cir.1987), cert. denied, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988).
 
 
 14
 FERC detected two flaws in MRT's argument. First, Order No. 436's endorsement of competition was qualified. While the Order found that the "workably competitive market" for natural gas dictated that pipelines be allowed to discount transportation services, it did not allow selective discounting of bundled services on the theory that with such services "the potential for market dominance by the pipeline is so great that more traditional utility-type regulation is required." Mississippi River Transmission Co., 54 F.E.R.C. at 66,411 (quoting Order No. 436 at 42,413). Second, FERC concluded that its condition did not put MRT at a competitive disadvantage because, by unbundling its transportation and sale services, it could selectively discount its transportation rates. Id.
 
 
 15
 MRT has no answer to these arguments. It asserts that its direct sale customers prefer bundled service, but it fails to explain why. No legitimate explanation being apparent, we see no reason to question FERC's implicit conclusion that bundled and unbundled service are adequate substitutes for each other. See 15 U.S.C. § 717r(b).
 
 
 16
 MRT also attacks the order on the ground that FERC imposed an unreasonably high floor on the transportation component of its bundled rate. According to MRT, the floor is higher than the competitive rate for the bundled service as a whole. Because this objection was first raised at oral argument, we may not consider it here. Id.; see also McBride v. Merrell Dow & Pharmaceuticals, Inc., 800 F.2d 1208, 1210-11 (D.C.Cir.1986).
 
 
 17
 The petition for review is denied.
 
 
 
 [1]
 Section 1(b) of the Natural Gas Act provides:
 The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.
 15 U.S.C. § 717(b).
 
 
 [2]
 Late on April 17, 1992, two business days before oral argument in this case, FERC filed a motion to remand. FERC did not obtain, did not even request, leave to file the motion, thereby violating our local rule requiring such leave for all potentially dispositive motions submitted more than forty-five days after the docketing of an appeal. Local Rule 7(i)(1). This is not some procedural peccadillo. Rule 7(i) is designed to facilitate resolution of such motions before the parties have sunk time, effort and expense into preparing their briefs and before the court has reviewed and analyzed the case. See Local Rule 7(i)(2). Absent unusual circumstances (and, in the case of a motion filed two days before oral argument, extraordinary ones), our concern for conserving the resources of this court and of the parties precludes consideration of a dispositive motion filed after the forty-five day period. FERC's last-minute filing ignored this rule and the policy behind it. For that reason alone, we deny it
 Another serious defect warrants comment. Rule 27(a) of the Federal Rules of Appellate Procedure requires a movant to "state with particularity the grounds on which [the motion] is based." Rather than particularity, FERC provided obfuscation. FERC's motion stated only that it would like to "reconsider its ruling in this case in light of its developing policies regarding gas transportation" and cited, without explanation, a single case, National Fuel Gas Supply Corp. v. FERC, 899 F.2d 1244 (D.C.Cir.1990). No one reading this motion could tell what FERC had in mind or what it intended to do with the case if it were returned. FERC offered not a clue about what its "developing policies" were, when they began developing, how far along they had proceeded, or why they might affect the petition for review. Only at oral argument, after considerable prodding from the bench, did FERC reveal what it had in mind. We will not go into what was then said. It is enough to express our extreme displeasure over FERC's tactics and its disregard of the governing rules. Cf. Freeport McMoran Oil & Gas Co. v. FERC, 962 F.2d 45, 46 (D.C.Cir.1992). Any repeat performance will be subject to sanctions.
 
 
 [3]
 MRT also argues that FERC has exceeded its authority by attempting to do indirectly through its conditioning power that which the Act prohibits it from doing directly. See, e.g., Richmond Power & Light v. FERC, 574 F.2d 610, 620 (D.C.Cir.1978). This argument falls with MRT's interpretation of § 1(b)
 
 
 [4]
 MRT contends that FERC's interpretation of § 1(b) departs without explanation from two earlier decisions, Florida Gas Transmission Co., 24 F.E.R.C. p 61,005 (1983), and United Gas Pipe Line Co., 54 F.P.C. 1109 (1975). Because MRT did not raise this argument below, it is likely barred from doing so by § 19(b) of the Act, 15 U.S.C. § 717r(b). In any event, we find little merit in it. In those cases, the Commission refused to dictate direct sale rates. That refusal is entirely consistent with its assertion here of authority to regulate the transportation rate imbedded in a bundled, direct sale