## Conowingo Project.

*Public Service Commission—Jurisdiction—Power companies—Issuance of securities—Lease—Approval of commission.*

1. The Public Service Law of July 26, 1913, P. L. 1374, as amended by the Act of March 23, 1921, P. L. 43, does not make the approval of the Public Service Commission a condition precedent to the issuance of securities by public service companies.

2. The requirement of the law is met if a certificate of notification fully responsive to all the questions contained in the commission form is tendered for filing, accompanied by the statutory filing fee.

3. The approval of the Public Service Commission is necessary where a power company of Pennsylvania proposes to lease its riparian properties in Pennsylvania to a corporation of another state.

4. The commission has power in such case to inquire into the rental terms of the agreement, and can refuse its approval should it appear that any such provisions are derogatory to the services, accommodation, convenience or safety of the public.

5. The commission has the power, and is required, to pass upon the terms of a lease of transmission lines of one Pennsylvania power company to another Pennsylvania company.

6. While the commission is not required to pass upon a general agreement of several power companies as to the undertakings of each in respect to the construction and financing of a power project, such agreement cannot become effective if it appears that several of the undertakings contained therein require the approval of the commission and such approval is not obtained.

7. The transmission of electric energy generated in one state into another constitutes interstate commerce.

8. Where a Pennsylvania company receives such power and distributes it to its customers, the commission has jurisdiction over the rates charged until Congress has expressly acted.

Department of Justice. Opinion to Hon. William D. B. Ainey, Chairman of Public Service Commission.

WOODRUFF, Att'y-Gen., Oct. 2, 1925.—In reply to your communication requesting my advice with respect to certain questions specifically set forth in the two letters of O. C. Merrill, Executive Secretary of The Federal Power Commission, which you enclosed: The questions concern the extent of your commission's jurisdiction over certain proposed transactions involved in the consummation of what is known as the Conowingo Project, being the creation of a power pool on the Susquehanna River in the States of Maryland and Pennsylvania; the construction of a hydro-electric generating plant in the State of Maryland; and the transmission of the major portion of electric energy thus produced to and for consumption in a certain area in the State of Pennsylvania.

Mr. Merrill's requests were for the purpose of information and guidance to the Federal Power Commission in the issuance of its license for the project and for determining the extent of its regulatory authority over the several corporate parties to the project. I shall abstain herein from a narration of the details of the said project; they are contained in eight contemplated agreements, printed copies of which are in your possession; also from extensive quotations from the Public Service Company Law or the Federal Power Act; both of these enactments are well known and readily accessible to you. I shall approach the questions from the aspect of your authority as a single and independent regulating agency and will not discuss herein your power to function jointly with the rate regulating authorities of the State of Maryland, and this solely for the reason that I do not consider the question of your authority so to jointly regulate as being necessarily involved in the questions as propounded. I shall also identify the corporation, owning the Pennsyl-

vania pool and the lessor of the Pennsylvania transmission line, as the Philadelphia Electric Power Company, because Mr. Merrill's inquiries thus style the corporation. While I understand it is in the contemplation of the parties to ultimately make this the corporate name, the requisite legal procedure has not yet been taken, the present legal title of the company being the Susquehanna Water Power Company.

The first question is: What authority has your commission over the issuance of securities of public utility electric corporations organized within the State?

The answer to the question is to be found in article III, section 4, of the Public Service Company Law, dealing with the powers and limitations of powers of public utilities, and article V, section 1, of the same statute, amended in other respects by the Act of March 23, 1921, P. L. 43, dealing with the powers and duties of the commission. The section first referred to, after authorizing the issuance of securities in accordance with the requirements of the State Constitution, making fictitious issues void and empowering, but not requiring, a utility to obtain, by application, a certificate of valuation from the commission to the effect that any particular issue is not within the constitutional inhibition, provides for the filing on, or prior to, the date of issuance of securities payable more than twelve months thereafter what is styled by the act a certificate of notification. The section makes certain specifications with respect to the contents of the certificate and empowers the commission to require additional information and to prescribe the form of the certificate. When filed, the certificate is expressly made a public record and the commission is authorized to give such further publicity as it deems to be for the public welfare. Article V, section 1, invests the commission with general administrative power, "as provided in this act," to supervise and regulate public utilities doing business in the Commonwealth, including "the power to inquire into and regulate, as specifically provided in this act, the issuing of stocks, trust certificates, bonds, notes or other securities by public service companies.''

It is apparent that the legislature did not intend to make commission approval a condition precedent to security issues. The requirement of the law is met if a certificate of notification fully responsive to all the questions contained in the commission form is tendered for filing, accompanied by the statutory filing fee.

The second question is: Has the Public Service Commission authority to pass upon and does the law require it to approve the terms of the "Pool Agreement," so-called, under which it is proposed to lease the riparian properties of the Philadelphia Electric Power Company in the State of Pennsylvania to the Susquehanna Power Company, a Maryland corporation, and does such authority to pass upon, or requirement of approval, extend to the annual rental which it is proposed to charge under such agreement?

The said "Pool Agreement" cannot become a valid contract until approved by your commission. It contemplates a sale, assignment, lease or transfer of properties, power, franchises or privileges by a utility doing business in Pennsylvania within the meaning of article III, section 3, clause (c), of the Public Service Company Law, which enacts that:

"Upon like approval of the commission first had and obtained as aforesaid, and upon compliance with existing laws, and not otherwise, it shall be lawful:

"(c) For any public service company to sell, assign, transfer, lease, consolidate or merge its property, powers, franchises or privileges, or any of them, to or with any other corporation or person."

Conowingo Project.

It will be noted that the operation of the provision is upon the utility proposing to dispose of its property, that is, the vendor, assignor or transferror or lessor, and that the identity or character of the vendee, etc., is immaterial. It was of no moment to the legislative mind that the vendee, lessee, etc., be a non-utility corporation or an individual or a corporation, utility or otherwise, of another state. No domestic utility could dispose of those things which might be essential (as enumerated in the statute) to the discharge of its public obligations until the State, through the commission, had passed upon and given its approval.

By article v, section 18, of the statute it is, *inter alia*, provided:

"When application shall be made to the commission . . . by any public service company . . . for the approval by the commission of the sale, assignment, transfer, lease, consolidation or merger of any of its powers, franchises or privileges with any other corporation or person; . . . such approval, in each and every case or kind of application, shall be given only if and when the said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience or safety of the public."

The reference in article iii, section 3, clause *(c)*, to "like" approval and "as aforesaid" is to the next preceding section, which provides that the commission's approval is to be "evidenced by its certificate of public convenience."

In its consideration of the matter the commission has full power to inquire into the rental terms of the agreement and can refuse its approval should it appear that any such provisions were derogatory to the service, accommodation, convenience or safety of the public.

The third question is: Does the commission have authority to pass upon and does the law require it to approve the terms of the lease of the transmission lines in Pennsylvania by the Philadelphia Electric Power Company to the Philadelphia Electric Company (both Pennsylvania corporations), including the annual rental which it is proposed to charge?

The answer, together with the reasons given to the question immediately preceding, applies in its entirety to this question. The lease, including rental provisions, must be approved by your commission before the agreement is a valid contract.

The fourth question is: Does the commission have authority to pass upon and does the law require it to approve the "Master Contract," so-called, between the several corporations, or would any rights or obligations under such contract be limited to such rights and obligations as existed under the several individual leases and contracts so that the authority to regulate the terms of the latter would be sufficient?

The "Master Contract" is an agreement among the Susquehanna Power Company, Philadelphia Electric Power Company, the Susquehanna Electric Company and the Philadelphia Electric Company as to the undertakings of each of the corporations with respect to the construction, leasing and financing of the Conowingo Project and the operation thereof and disposition of energy produced thereby. The law does not require that this agreement be submitted to the commission for its approval. However, several of the undertakings therein contained, and vital to the corporate plan of the project, cannot be consummated until the approval of the commission is obtained.

The fifth question is: Has the commission authority to require the maintenance of a system of accounts and reports by the Philadelphia Electric Power Company, a non-operating concern?

An answer to this question must await a fuller disclosure of the facts than now in my possession. The Philadelphia Electric Power Company has corporate responsibilities to supply electric current to the public within the confines of its charter territory. The plan seems to contemplate that the said company will meet this duty by distributing energy purchased from the Susquehanna Electric Company. Should this be the fact, said Philadelphia Electric Power Company would not be a "non-operating concern," and would clearly be subject to article II, section 1, clause (i), of the commission's organic act, making it the corporate duty "To adopt, use and keep, in conducting its business, such form, method, system or systems of accounts, records and memoranda as shall be prescribed by the commission; to carry no charges in any operating account which should properly be charged to the capital account, or *vice versa;* to carry a proper and reasonable depreciation account, if required so to do by order of the commission; and to obey and abide by all the regulations and orders of the commission concerning such accounts, records and memoranda, and the keeping of the same."

I, accordingly, abstain from answering at this time your fifth question. It can be renewed, if deemed necessary, after all the facts pertaining to the matter have been developed.

The sixth question is: Has the commission authority to pass upon the terms of the "Operating Agreement," so-called, between the Susquehanna Electric Company and the Philadelphia Electric Company, or the annual payments to be made thereunder?

Under this contract, the Susquehanna Electric Company agrees that it will so operate the properties leased to it by the Susquehanna Power Company, including the right to the exclusive benefit and enjoyment of the Pennsylvania Power Pool acquired by the said Susquehanna Power Company under agreement with the Philadelphia Electric Power Company, as to deliver to the high-tension transmission line constructed by the Philadelphia Electric Power Company in Pennsylvania from the Pennsylvania-Maryland boundary-line (said line being leased to Philadelphia Electric Company), the maximum hydro-electric energy consistent with the capacity of the plant, the flow of the Susquehanna River and certain energy requirements of the market local to the power plant. The operating agreement is between the Susquehanna Electric Company and the Philadelphia Electric Company. It contains the measure of compensation to be made for the energy thus to be transmitted. The contract does not require the approval of your commission as a condition precedent to its validity. Your commission can, however, require, under article II, section 1, clause (g), that a certified copy of the contract be filed with it.

The seventh question is: If such operating agreement is executed and becomes effective in its present form, can it later be made subject to review or revision, directly or indirectly, in any rate-making proceeding in Pennsylvania?

The Susquehanna Electric Power Company, as hereinbefore indicated, is a corporation of the State of Maryland. It does not contemplate registering in Pennsylvania as a public service company engaged in business in this State. While it succeeds to the rights of its lessor (the Susquehanna Power Company) in the Pennsylvania pool, that right is expressed to be only the right of "exclusive use and benefit," maintenance and anything necessary to be done in the future with respect to the Pennsylvania pool being performed by one or the other of the Pennsylvania companies. The place of delivery of

electric energy by the Maryland company is expressly stated to be at a point on the Pennsylvania-Maryland boundary.

I am of the opinion that your commission should approach the consideration of the project on the theory that it singly lacks authority to regulate directly the rate provisions of the operating agreement. That the transmission of electric energy generated in one state into another constitutes interstate commerce seems clear by analogy with the transportation of natural gas: P. U. Commission v. Landon, 249 U. S. 236; Pennsylvania Gas Co. v. Public Service Commission, 252 U. S. 23. Its status as interstate commerce was directly ruled by the West Virginia Supreme Court of Appeals in Mill Creek Coal and Coke Co. v. Public Service Commission, 7 Am. Law Reps. 1081. In the case of Missouri v. Kansas Gas Co., 265 U. S. 298, it was decided that the business of piping natural gas from one state to another and selling it, not to consumers, but to independent distributing companies, which sell it locally to the consumers, was interstate commerce, free from state interference, and that an attempt of a state to fix the rates chargeable in this interstate business was a direct burden on interstate commerce, even in the absence of any regulation of it by Congress.

Aside from the fact that under the project the "distributing" company (the Philadelphia Electric Company) is to own all of the capital stock of the "transmitting" company, Susquehanna Electric Company, except qualifying shares, the interstate commerce between the parties would seem to be no different in principle than that before the court in the case last cited. Whether this stock ownership has any bearing with respect to the authority of your commission to exercise regulatory control over the rate provisions of the agreement under consideration, I deem it unnecessary for the present purpose to inquire, inasmuch as the Philadelphia Electric Company could, through the medium of a non-utility holding company or other corporate device, divest itself of such stock ownership and still insure against the acquisition of control of the Maryland company by adverse interests. As to any commission power to review or revise indirectly any rate provision of the operating agreement, I advise you that, whether the Philadelphia Electric Company, in distributing electric energy purchased under the agreement, would function in interstate commerce or not, the rates charged to its consumers would be subject under the present law to the jurisdiction of your commission. The character of its interstate commerce, if any, would be local and not national and would accordingly come within the Pennsylvania Gas Company decision hereinbefore cited, wherein authority of the state to regulate the rates until Congress had expressly acted was definitely conceded.

In any commission inquiry into the reasonableness of rates of the Philadelphia Electric Company, moneys paid by said company pursuant to contract provisions, and charged to operating expenses, would be before the commission, although the scope of the commission's authority in such a proceeding with respect to such contract payments could not at this time be definitely described. The question of managerial judgment would be a factor in the case, and the extent of power of a regulatory body functioning in an inquisitorial and corrective capacity is a matter determinable only under all the facts and circumstances with respect to a particular company at a particular time.

The eighth question is: Has the commission authority to pass upon, and does the law require it to approve, the "Guaranty Agreement," so-called, between the Susquehanna Electric Power Company, a Maryland corporation, and the Philadelphia Electric Company, a Pennsylvania corporation?

Pursuant to the provisions of this agreement, the Philadelphia Electric Company guarantees to the Susquehanna Electric Power Company the faithful performance of the obligations and undertakings of the latter's lessee (the Susquehanna Electric Company) as contained in a contract called "Lease of Maryland Properties."

No provision of the Public Service Company Law confers or imposes on the Pennsylvania Public Service Commission the power or duty to pass upon or approve the "Guaranty Agreement."