GALLOWAY et al. v. BELL et al. *

(Court of Appeals of District of Columbia. Submitted January 6, 1926. Decided March 1, 1926.)

No. 4278.

1. Commerce ☰40(1)—Courts of District of Columbia cannot compel utilities commission of District to fix reasonable rates on gas sold by company within District to alleged subsidiary outside District (Interstate Commerce Act, § 1, as amended by Act June 18, 1910, § 7, and Act Feb. 28, 1920, § 400 [Comp. St. Ann. Supp. 1923, § 8563]; Act March 4, 1913 [37 Stat. 975]).

Courts of District of Columbia have no jurisdiction of proceeding by consumers of gas purchased from Maryland company an alleged subsidiary of company within District of Columbia, from which it obtained its whole supply of gas, to compel public utilities commission of District to fix reasonable rates on gas supplied to Maryland company, since commission itself has no jurisdiction to establish rates on gas sold outside District: such matter being one of interstate commerce, in view of Interstate Commerce Act, § 1, as amended by Act June 18, 1910, § 7, and Act Feb. 28, 1920, § 400 (Comp. St. Ann. Supp. 1923, § 8563), and Act March 4, 1913.

2. Commerce ☰33—Distribution of gas by pipe line from one state to another or from District of Columbia to state is interstate commerce, which cannot be burdened by states.

Transmission of gas by pipe line from one state to another, or from District of Columbia to a state, being interstate commerce, it is beyond power of state to impose any burden thereon.

Appeal from Supreme Court of District of Columbia.

Suit by Charles C. Galloway and others against James Franklin Bell and others, constituting the Public Utilities Commission of the District of Columbia, and others. From decree of dismissal, plaintiffs appeal. Affirmed.

H. C. Clark, of Washington, D. C., for appellants.

F. H. Stephens and B. S. Minor, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and GRAHAM, Presiding Judge of the Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellants, plaintiffs below, filed a bill in equity against defendants, the Public Utilities Commission of the District of Columbia, referred to hereafter, for convenience, as the commission, the Washington Gaslight Company, a corporation organized under an Act of Con-

*Certiorari denied 46 S. Ct. 482, 70 L. Ed. —.

gress approved July 8, 1848, 9 Stat. 722, hereafter referred to as the Washington Company, and the Washington Gaslight Company of Montgomery County, Maryland, a corporation organized under the laws of the state of Maryland, hereafter referred to as the Maryland Company, to have a wholesale gas rate, alleged to have been fixed by the District Utilities Commission between the Washington Company and the Maryland Company, declared void, and for further relief.

It appears that plaintiffs, residing in Tacoma Park, Md., are consumers of gas purchased from the Maryland Company; that the Washington Company supplies gas to the Maryland Company at the District of Columbia line; that the Maryland Company manufactures no gas, but it secures its supply from the Washington Company for distribution to its consumers residing in Tacoma Park and other localities in Montgomery county adjacent to the District of Columbia; that consumers of gas, supplied by the Maryland Company, pay a rate at least 23 cents per 1,000 cubic feet higher than that paid the Washington Company by consumers in the District of Columbia; and that the stock of the Maryland Company is all owned by the Washington Company, with the exception of one share each to three directors of the Washington Company, who are the officers of the Maryland Company.

The relation between the Washington and the Maryland Companies, and the manner in which the gas is furnished and distributed, is set forth in paragraph 4 of the bill, the truth of which is admitted by the motion to dismiss, as follows:

(4) "The total outstanding capital stock of Washington Gaslight Company of Montgomery County, Maryland, consists of five hundred (500) shares, of par value of twenty ($20) dollars per share. All of said stock, with the exception of three shares, of $20 each, is owned by Washington Gaslight Company. Said three excepted shares are owned by three directors of Washington Gaslight Company. Washington Gaslight Company of Montgomery County, Maryland, neither manufactures nor produces any gas, but is solely a distributing company. Said two companies are directed largely by the same officers and directors, and are substantially under a common control. The mains and pipes of said two companies are interconnected, and form one interrelated and co-ordinated system. Said system of pipes and mains are so interrelated and interconnected as to be inseparable without a large outlay for extensive reconstruction, which would involve in many

instances an actual duplication of mains along the same streets. By order of the Public Utilities Commission of the District of Columbia, made and entered in May, 1920, the Washington Gaslight Company was directed to install meters in the mains used to supply gas to the Washington Gaslight Company of Montgomery County, Maryland, so connected as to register correctly the entire amount of gas supplied to said Maryland Company. That by reason of the interrelated and interconnected system of mains and service pipes it has been found not only impractical, but impossible, to install such meters. That in some instances the same main serves customers on each side of the boundary line separating the District of Columbia and the state of Maryland, the service pipes in such instances leading off from the main on the one hand delivering gas to customers of the Washington Gaslight Company in the District of Columbia, and the service pipes leading off from the same main on the other hand delivering gas to customers of the Washington Gaslight Company of Montgomery County, Maryland, in Maryland. That in other instances the main at one place runs through Maryland, and then returns further on to the District of Columbia, or in other words zigzags to a greater or less extent across said boundary, and at various points delivers gas to customers of the one company or the other, determined solely by whether such customer receives such gas in the District of Columbia or in the state of Maryland."

The prayer for relief is that the wholesale rate fixed by the commission to be charged the Maryland Company by the Washington Company be declared void, and that the commission be enjoined from maintaining or enforcing any rate with respect to gas transported from the District of Columbia into the state of Maryland; that the Washington Company be enjoined from charging or collecting from the Maryland Company a wholesale rate for gas so delivered; and that the Maryland Company be enjoined from charging or collecting from plaintiffs or other customers a rate for gas higher than is charged by the Washington Company to consumers in the District of Columbia.

Defendants moved to dismiss the bill, and from a decree sustaining the motion the case comes here on appeal.

[1] The bill is framed upon the theory that the District commission has fixed the rate at which gas shall be delivered by the Washington Company to the Maryland Company at the District line; but an examination of the various orders of the commission, as set forth

in the record, do not sustain this contention. In the order of May 29, 1920, the commission, in determining rates to be established within the District of Columbia, after taking cognizance of the business transacted by the Washington Company with the Maryland Company and other similar companies, said: "The commission has given consideration to the establishment of a wholesale price to large consumers. The number of large consumers in Washington is limited, but, as the cost of furnishing service to such consumers is undoubtedly less than in the case of small consumers, it is believed that they should have the benefit of a lower rate. In the judgment of the commission these wholesale rates should apply, not only to large consumers within the District of Columbia, but also to the three distributing gas companies in Maryland and Virginia that obtain their supply of gas from the Washington Companies. * * * The amount of gas supplied by the District of Columbia Companies to the Maryland and Virginia Companies is determined by the aggregate of the amount shown by the consumers' meters and then adding thereto 7½ per cent. to cover transmission and other losses. While the commission does not question the integrity of the officials of these companies, it is believed the practice is open to abuse, and that it should be corrected within a reasonable time by the introduction of meters in the mains at the points where they cross the boundary line of the District of Columbia."

And again in the order of March 13, 1922, when the present rates in the District of Columbia were fixed by the commission, reference was made to the sales to the subsidiary companies in Maryland and Virginia. In neither of the above orders was a wholesale rate fixed for gas to be delivered to the Maryland and Virginia Companies. The amount realized by the Washington Company from the sales of gas to these companies outside the District was considered in connection with the business done by the Washington Company in the District of Columbia, for the purpose of arriving at an equitable rate to be charged consumers within the District of Columbia. Nor did the commission order meters to be established at the District line. What was said in the orders of the commission relative to the installing of meters at these points was merely in the nature of a recommendation, in order that a more accurate accounting could be made of the exact amount of gas sold outside of the District. The commission, we think, confined itself in these orders exclusively to the matter of the fixing of rates within the District.

[2] Underlying and decisive of the propositions advanced by plaintiffs in this case is the fundamental question of jurisdiction. It is of little importance whether the District commission did or did not fix the price at which the Washington Company shall deliver gas to the Maryland Company at the District line. While we are clearly of the opinion that the commission has not assumed this power, nevertheless it would have done a vain thing if it had attempted it, since the transmission of gas by pipe line from one state to another, or from the District of Columbia to a state, is interstate commerce, and it is beyond the power of a state to impose any burden upon such commerce. As was said by Mr. Justice Hughes, speaking for the court, in Minnesota Rate Cases, 33 S. Ct. 729, 739, 230 U. S. 352, 396 (57 L. Ed. 1511, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18): "If a state enactment imposes a *direct burden* upon interstate commerce, it must fall, regardless of federal legislation. The point of such an objection is, not that Congress has acted, but that the state has directly restrained that which in the absence of federal regulation should be free."

In the present case there has been no attempt at federal control. Distribution of natural or artificial gas by pipe line in interstate commerce is expressly excepted from the provisions of Interstate Commerce Act, § 1, as amended. 36 Stat. 539, 544, § 7, as amended 41 Stat. 474, § 400 (Comp. St. Ann. Supp. 1923, § 8563). It is likewise excepted from the act creating and defining the jurisdiction of the District commission, since its jurisdiction is limited to the District of Columbia. 37 Stat. 975. The limitations upon the commission forbid any attempt at regulation by it of the manner or price at which gas shall be delivered by the Maryland Company to its consumers. In the case of Missouri v. Kansas Gas Co., 44 S. Ct. 544, 265 U. S. 298, 68 L. Ed. 1027, the Kansas Company was engaged in delivering gas from the states of Kansas and Oklahoma to distributing companies in the state of Missouri. An attempt was made by the state of Missouri to restrain the Kansas Company from increasing the rate at which gas should be delivered to the distributing companies without the consent of the Public Utilities Commission of the state of Missouri. An injunction was denied in the federal court and the action was sustained by the Supreme Court. Mr. Justice Sutherland, speaking for the court, said:

"The contention that, in the public interest, the business is one requiring regulation, need not be challenged. But Congress thus

far has not seen fit to regulate it, and its silence, where it has the sole power to speak, is equivalent to a declaration that that particular commerce shall be free from regulation. See Robbins v. Shelby County Taxing District [7 S. Ct. 592] 120 U. S. 489, 493 [30 L. Ed. 694]. With the delivery of the gas to the distributing companies, however, the interstate movement ends. Its subsequent sale and delivery by these companies to their customers at retail is intrastate business and subject to state regulation. Public Utilities Comm. v. Landon, supra, page 245 [39 S. Ct. 268, 249 U. S. 236, 63 L. Ed. 577]. In such case the effect on interstate commerce, if there be any, is indirect and incidental. But the sale and delivery here is an inseparable part of a transaction in interstate commerce —not local, but essentially national, in character—and enforcement of a selling price in such a transaction places a direct burden upon such commerce inconsistent with that freedom of interstate trade which it was the purpose of the commerce clause to secure and preserve. It is as though the commission stood at the state line and imposed its regulation upon the final step in the process at the moment the interstate commodity entered the state and before it had become part of the general mass of property therein."

It thus appears that not only is the District commission powerless to fix the price at which gas shall be delivered by the Washington Company to the Maryland Company, but the Maryland commission is likewise without power or authority to act in the premises. Neither of the commissions, nor any authority within the District or the state of Maryland, can regulate this matter, since such regulation would amount to the placing of a burden upon interstate commerce. Its regulation at that point lies alone with Congress, and Congress thus far has failed to act. The moment, however, that the gas is delivered to the Maryland Company, the interstate movement ends. The conduct of the Maryland Company in the distribution of the gas to its consumers is wholly intrastate, and is subject to the control and authority of the state, acting through its Utilities Commission. This is a matter, however, beyond the jurisdiction of the courts of the District of Columbia, or the District commission, to control. It is a question for the state, and not the federal authorities.

Nor are we particularly concerned with the contention of plaintiffs that the Washington and Maryland Companies should be treated as a single corporate entity, rather than as distinct and separate corporate entities. This contention is based upon the fact that the

11 F.(2d)—36

Washington Company is the owner of the stock of the Maryland Company; that the officers of the Maryland Company are directors of the Washington Company; and that the Maryland Company is merely a subsidiary agency of the Washington Company for selling and delivering its gas to consumers in Maryland. It is unnecessary to decide this rather troublesome question, since, were plaintiffs' contention sustained, relief could not be afforded in this proceeding. The courts of the District of Columbia have no jurisdiction in a proceeding of this sort to establish, determine, or fix rates at which gas shall be delivered to consumers, or to establish regulations affecting its delivery; nor can the District commission be enjoined to afford relief in this case, since its jurisdiction is expressly confined to the District of Columbia. Should this entity theory ultimately be established, it would still leave the regulation of the service in Maryland within the jurisdiction of the Maryland Utilities Commission. Penna. Gas Co. v. Public Service Com., 40 S. Ct. 279, 252 U. S. 23, 64 L. Ed. 434. The Maryland commission is not a party to this action, and, if it were, it would not be subject to the jurisdiction or control of the courts of the District of Columbia in this proceeding.

The decree is affirmed, with costs.