**PAN AMERICAN PETROLEUM COR-PORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 6324.**

United States Court of Appeals Tenth Circuit.

Jan. 31, 1961.

J. P. Hammond, Tulsa, Okl. (William H. Emerson, Tulsa, Okl., William J. Grove, Carroll L. Gilliam and John Paul Sullivan, Washington, D. C., and Dow, Lohnes & Albertson, Washington, D. C., of counsel, on the brief), for petitioner.

Peter H. Schiff, Atty., Washington, D. C. (Willard W. Gatchell, Gen. Counsel, Howard E. Wahrenbrock, Sol., and Luke R. Lamb, Asst. Gen. Counsel, Washington, D. C., on the brief), for respondent.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and RICE, District Judge.

LEWIS, Circuit Judge.

This is a petition for review [1] of an order of the Federal Power Commission issued October 23, 1959, suspending a proposed change in petitioner's rate schedule and ordering a hearing on the lawfulness of the proposed increase.

Pan American Petroleum Corporation, an independent producer of natural gas, sells gas in interstate commerce to Tennessee Gas Transmission Company from leases in Carthage Field, Texas, under a 1947 contract filed with the Commission as Pan American's FPC Gas Rate Schedule No. 72. The rate as originally agreed upon by the parties and accepted by the Commission appears in paragraph 10 of the contract:

"10. The prices to be paid by Buyer to Seller for gas sold and delivered to Buyer hereunder shall be as follows:

"For all gas delivered prior to 8 o'clock A.M. on June 1, 1952 * * * 5½¢ per MCF

"For all gas delivered during the five (5) years following 8 o'clock A.M. on June 1, 1952 * * * 6½¢ per MCF

"For all gas delivered during the five (5) years following 8 o'clock A. M. on June 1, 1957 * * * 7½¢ per MCF

"For all gas delivered during the remainder of the term of this contract the price shall be determined by agreement between the parties to be made not less than six (6) months prior to June 1, 1962; and, in the event the parties are unable to so agree, the price shall be determined by arbitration under Section 15 hereof.

"If at any time and from time to time after the date of the initial delivery of gas hereunder, the cost per MCF of gas purchased by Buyer from any other gas producer in the Carthage Field shall be greater than the cost per MCF of gas purchased hereunder, Buyer will increase the price per MCF payable to Seller for gas delivered hereunder, currently as deliveries are made, and only during periods in which Buyer is paying such greater cost, to such other gas producer in said field, by an amount equal to the difference between the highest cost per MCF paid at the time by Buyer to any gas producer in said Field and the cost per MCF payable hereunder * * *

*    *    *    *    *    *

"Notwithstanding any provisions in this contract, it is distinctly understood and agreed that the net price to producer during the life of this contract shall never be less than the net price paid by Buyer to any other producer in the same field during this period."

Another contract which the buyer, Tennessee Gas Transmission Company, had negotiated with another producer, Champlin Oil and Refining Company, provided that Champlin would be paid a price equal to the average of the three highest prices being paid for comparable oil deliveries. A redetermination of Champlin's price under this provision allowed an increase to Champlin to 14.4248¢ per MCF effective November 1, 1959, and under the above-quoted escalation or "favored nation" clause, petitioner claimed the same rate. Negotiations resulted in the signing of a letter dated June 2, 1959, by petitioner and Tennessee providing in pertinent part:

"Therefore, we are agreeable to your proposal that the total amount payable by Tennessee for gas purchased under the above described contract commencing as of November 1, 1959, shall be 14.42480¢/MCF at a pressure base of 14.65 psia which price includes all allowances for dehydration by Pan American.

---

1. Section 19(b) of the Natural Gas Act, 52 Stat. 831, 15 U.S.C.A. § 717r.

and also all tax reimbursement for which Tennessee is liable under the subject contract as of May 1, 1959.

"This letter, when accepted and agreed to by you in the space provided herein below, shall constitute our agreement and determination of the price to be paid for gas sold and purchased pursuant to the terms of the aforesaid contract. After execution, please return one (1) copy of this letter to us for our files."

Appending a copy of this letter, Pan American notified the Commission of the anticipated change in rates by letter received September 21, 1959, which stated inter alia:

"The change in price covered hereby is not attributable to a change to the contract involved herein, but is in accordance with the provisions of said contract as constituted on the date of the initial filing thereof."

and further that:

"The provisions of the contract to which this filing relates has (sic) been effective since the execution of the contract and will be operative as to the increase involved herein on November 1, 1959. This notice shall be effective 30 days subsequent to the date of filing hereof."

By order issued October 23, 1959, the Federal Power Commission suspended the rate and deferred its use "until a date five months from the date the favored-nations provision of the * * * rate schedule becomes activated, and thereafter until such further time as [it] is made effective in the manner prescribed by the Natural Gas Act."

The reason for this action was stated by the Commission in its denial of application for rehearing to be that it had previously suspended until April 1, 1960, the proposed change in rate under the Champlin-Tennessee contract, which change would activate the petitioner's change in rate.

Petitioner asserts that inasmuch as 32 days had expired from the date of its filing of notice, that the rate stated in that notice had become "effective" although it was not collectible under the contract until a later date. Therefore, it urges, the Commission was without power to enter its order of suspension subsequent to the 30-day notice period under Section 4(d) of the Natural Gas Act, 15 U.S.C.A. § 717c(d).[2] Further, petitioner claims that the effect of suspending its right to receive the increased rate to a time five months beyond the time Champlin may collect an increased price, presently April 1, 1960, is to suspend the new rate for ten months which is beyond the Commission's power under Section 4(e) of the Act;[3] and that the

2. Section 4(d), 15 U.S.C.A. § 717c(d):

"Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, *except after thirty days' notice to the Commission and to the public.* Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published." (Emphasis added.)

3. Section 4(e), 15 U.S.C.A. § 717c(e):

"Whenever any such new schedule is filed the Commission shall have authority * * * to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission * * * may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, *but not for a longer period than five months beyond the time when it would otherwise go into effect:* * * * If the proceeding has not be concluded and an order made at the expiration of the suspen-

Commission may only determine the lawfulness of the rate payable under contract as of November 1, 1959, suspending the use of that rate for a period of five months pending such determination.

▮▮ Pertinent to the first issue is the recognition by the Commission [4] and the courts [5] that the Commission may act to exercise its suspension power prior to the effective date of a changed rate or service and that a failure to act during that time gives tacit approval requiring, as an existing rate, a proceeding under Section 5 of the Act [6] to upset it. And we have held that the effective date of a proposed change coincides with the expiration of the 30-day notice period in those instances ·where the notice of change sets forth the date of applicable collection change as one prior to the expiration of the period of notice.[7] We find, however, no support in the cases nor in the wording of the Act warranting petitioner's contention that the Commission's power to suspend becomes barred thirty days after the date of filing of notice. Such interpretation ignores the wording of the Act which requires the notice to state " * * * the time when the change or changes will go into effect." The quoted words require the petitioner to indicate a specific date upon which the proposed change is to become effective, Mississippi River Fuel Corp. v. F. P. C., supra, and compel the conclusion that the 30-day notice is a minimum procedural requirement imposed upon petitioner rather than a limitation set upon the Commission powers.

Indicative· of this view are the words of Mr. Justice Harlan interpreting Sec. 4 (d) in *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 338, 76 S.Ct. 373, 377, 100 L.Ed. 373: "Changes in previously filed rates or contracts must be filed with the Commission *at least 30 days before they are to go into effect * * *.*" (Emphasis added.)

We hold therefore that the Commission's order of suspension was not untimely. It follows that petitioner's second contention is without merit.

▮ The triggering event of petitioner's increased price was the increase in price paid under another contract, Champlin, and the effect of suspending Champlin's use of its contract in collection of amounts due under the contract was to defer as a matter of fact petitioner's right to demand an increased rate. The lawful act of the Commission in deferring Champlin had, in law, the effect of changing petitioner's effective date as contained in the notice and gave the Commission the discretionary power it chose to exercise.

▮ It is urged that the interpretation of the Tennessee-Pan American Contract by the parties that the increased amount would become due November 1, 1959, determines the time from which the suspension power of the Commission must be computed. But under the familiar rules of contract law, this provision must be read in conjunction with other parts of the contract and cannot abrogate the triggering pro-

---

sion period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission * * *". (Emphasis added.)

4. Commission Rules of Practice and Procedure § 2.4, 18 CFR 2.4; In re Virginia State Operation Commission, 8 P.U.R.3d 485, 486.

5. Phillips Petroleum Co. v. F. P. C., 10 Cir., 227 F.2d 470, 474, certiorari denied Michigan Wisconsin Pipe Line Co. v. Phillips Petroleum Co., 350 U.S. 1005, 76 S.Ct. 649, 100 L.Ed. 868; Mississippi River Fuel Corp. v. F. P. C., 3 Cir., 202 F.2d 899, 902.

6. 15 U.S.C.A. § 717d.

7. Phillips Petroleum Co. v. F. P. C., supra. The notice was filed August 31 and the 30-day period expired October 1. The notice set September 1 as the date for increased collections.

vision, especially when it is clear that the letter agreement was intended only as a notice and agreement of an anticipated change.

The order of the Commission is affirmed.