SOUTHWEST GAS CORPORATION, a CALIFORNIA CORPORATION, APPELLANT, v. PUBLIC SERVICE COMMISSION OF NEVADA, AN ADMINISTRATIVE AGENCY OF THE STATE OF NEVADA; NOEL A. CLARK, CHAIRMAN, EVO A. GRANATA AND HEBER P. HARDY, AS MEMBERS OF SAID COMMISSION, RESPONDENTS.

No. 7912

January 28, 1976                    546 P.2d 216

*Darrell Lincoln Clark, Charles H. McCrea* and *Frank J. Cremen,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, and *Robert Crowell,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, BATJER, J.:

On April 3, 1974, pursuant to Chapter 704 of the Nevada Revised Statutes, Southwest Gas Corporation, appellant, (herein referred to as Southwest) filed an application with the Public Service Commission of Nevada (herein referred to as the Commission) containing a proposed schedule of new rates and charges, requesting that they become effective upon 30 days notice, although they were not to be collectible until October 1, 1974. The Commission issued an order on April 18, 1974, suspending the schedules of rates and charges for a period of 150 days commencing October 1, 1974. Southwest sought affirmative relief in the district court from that suspension order. This appeal is taken from the judgment affirming the suspension.

Although there are a number of contentions hurled back and forth between appellant and respondents, the sole issue on this appeal is whether the district court erred as a matter of law in declaring that the Commission has the statutory power to order the suspension of a rate schedule filed with it for a period of 150 days beyond the date upon which Southwest proposed to begin collection rather than 180 days beyond the date of the filing of the schedule.

The Commission is authorized to suspend the operation of a rate schedule, but not for a longer period than 150 days beyond the time when such rate would otherwise go into effect. NRS 704.110.[1]

Without the specification in Southwest's application providing that the schedules containing the new rates and charges would not become collectible until October 1, 1974, they would have, subject to an order of suspension, gone into effect and

---

[1]NRS 704.110: "1. Whenever there shall be filed with the commission any schedule stating a new or revised individual or joint rate, fare or charge, or any new or revised individual or joint regulation or practice affecting any rate, fare or charge, or any schedule resulting in a discontinuance, modification or restriction of service, the commission shall have, and it is hereby given, authority, either upon complaint or upon its own motion without complaint, at once, and if it so orders, without answer or formal pleading by the interested utility or utilities, to enter upon an investigation or, upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, fare, charge, classification, regulation, discontinuance, modification, restriction or practice.

"2. Pending such investigation or hearing and the decision thereon, the commission, upon delivering to the utility or utilities affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, fare, charge, classification, regulation, discontinuance, modification, restriction or practice, but not for a longer period than 150 days beyond the time when such rate, fare, charge, classification, regulation, discontinuance, modification, restriction or practice would otherwise go into effect.

"3. After full investigation or hearing, whether completed before or after the date upon which the rate, fare, charge, classification, regulation, discontinuance, modification, restriction or practice is to go into effect, the commission may make such order in reference to such rate, fare, charge, classification, regulation, discontinuance, modification, restriction or practice as would be proper in a proceeding initiated after the rate, fare, charge, classification, regulation, discontinuance, modification, restriction or practice has become effective."

(The amendments to this section effective July 1, 1975, have no bearing on the issue in this case.)

become collectible 30 days after filing with the Commission. NRS 704.100;[2] NRS 704.110. Pan American Petroleum Corp. v. Federal Power Com'n, 287 F.2d 469 (10th Cir. 1961).

The 30-day notice to the Commission and the public is not only a minimum notice period for a utility's customers and the Commission but also a maximum waiting period for a utility. See United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division, 358 U.S. 103 (1958). In the absence of a prospective collection date such as Southwest included in its application, 30 days is the maximum a utility can be compelled to wait from the time it files its rate changes until the date the changes take effect unless the Commission properly exercises its suspension power. Cf. Indiana & Michigan Electric Co. v. Federal Power Com'n, 502 F.2d 336 (D.C. Cir. 1974), cert. denied, 420 U.S. 946 (1975).

A utility has a statutory right to effect a rate increase subject to being able to justify such increase before the Commission. United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division, supra. Implicit in that right is the prerogative to designate a date when the new rates and charges would be collectible so long as that date is not less than 30 days from the date of filing notice with the Commission. Cf. Pan American Petroleum Corp. v. Federal Power Com'n, supra.

---

[2]NRS 704.100: "1. No changes shall be made in any schedule, including schedules of joint rates, or in the rules and regulations affecting any and all rates or charges, except upon 30 days' notice to the commission, and all such changes shall be plainly indicated, or by filing new schedules in lieu thereof 30 days prior to the time the same are to take effect. The commission, upon application of any public utility, may prescribe a less time within which a reduction may be made.

"2. Copies of all new or amended schedules shall be filed and posted in the stations and offices of public utilities as in the case of original schedules.

"3. The commission shall determine whether a hearing shall be held when the proposed change in any schedule stating a new or revised individual or joint rate, fare or charge, or any new or revised individual or joint regulation or practice affecting any rate, fare or charge, will result in an increase in annual gross revenue as certified by the applicant of $2,500 or less.

"4. In making such determination the commission shall first consider all timely written protests, any presentation the staff of the commission may desire to present, the application and any other matters deemed relevant by the commission."

(The amendments to this section effective July 1, 1975, have no bearing on the issue in this case.)

Southwest relies on Re D.C. Transit System, Inc., 81 P.U.R.3d 417 (Wash. Met. Area Tran. Com'n 1969), and Phillips Petroleum Company v. Federal Power Com'n, 227 F.2d 470 (10th Cir. 1955), cert. denied, 350 U.S. 1005 (1956), to support its position. In *D.C. Transit,* the Washington Transit Compact provided for a 30-day notice period and for a 90 day suspension period which could be extended by the transit commission up to 120 days beyond the date of suspension. There the date of suspension was June 27, 1969, and the commission held that a decision must issue by October 26, 1969, which was 150 days beyond May 29, 1969, the date of filing and "no later than" 120 days beyond the date of suspension. If the transit commission failed to act, the fares proposed by D.C. Transit would have automatically gone into effect on October 27, 1969. Neither the facts nor the law is similar to the case before us; Re D.C. Transit System, Inc., supra, therefore is inapposite. Southwest's reliance upon *Phillips* is likewise misplaced, and we also find that case to be inapposite. There the pertinent question was whether the telegram dispatched to Phillips met the requirements of Section 4(e) of the Natural Gas Act. No question of when the new rates and charges were "to take effect" or "would otherwise go into effect" was before the court.

Nor is Indiana & Michigan Electric Co. v. Federal Power Com'n, supra, helpful in Southwest's contention. There I & M filed the proposed change in its tariff schedule with the Federal Power Commission on June 13, 1972. Nearly two months later, on August 11, 1972, the Federal Power Commission designated August 13, 1972, as the effective date and suspended use of the proposed changes in its tariff schedule for five months until January 13, 1973. The Commission by regulation imposed a *de facto* 60 day requirement on utilities seeking to increase their rates. That court held that such a requirement contravenes the terms of Sec. 205(d) of the Federal Power Act which provided for a 30-day notice requirement, that the lawful effective date of I & M's rate filing was July 14, 1972, and that the Federal Power Commission had no authority to suspend the use of the new rate schedule on August 11, 1972, nearly a month after it had become effective. Clearly that case is distinguishable on the facts.

No case has been cited and our research has revealed none specifically deciding the exact issue before us. However, in Pan American Petroleum Corp. v. Federal Power Com'n, supra, the triggering event of Pan American's increased price

was the increase in price paid under a "favored nations provision" in the contract of a third party. The Federal Power Commission acting under Sections 4(d) and (e) of the Natural Gas Act, 15 U.S.C.A. § 717c(d), (e), which are similar in wording to NRS 704.100 and 704.110, suspended the rate and deferred its use "until a date five months from the date the favored-nations provision of the * * * rate schedule becomes activated, and thereafter until such further time as [it] is made effective in the manner prescribed by the Natural Gas Act." This had the effect of suspending the rate for 10 months instead of the 5 months authorized. The United States Court of Appeals, Tenth Circuit, held the Federal Power Commission's order of suspension was not untimely.

Suspension powers, when timely effected, have been granted to the Commission to provide a status quo during which an investigation may be made into the reasonableness of the proposed new rate schedule. Here the date when the new rates and charges would become collectible was established by Southwest in its notice to the Commission and became the date when "the same are to take effect" (NRS 704.100) and "would otherwise go into effect" (NRS 704.110) in the absence of a suspension. It is difficult to imagine a more crucial or effective date, both for the consumer and the appellant, than the date when the new rates and charges would become collectible.

The judgment of the district court is affirmed.

GUNDERSON, C. J., and MOWBRAY and THOMPSON, JJ., and TORVINEN, D. J., concur.