**NATIONAL FUEL GAS SUPPLY CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 89–1245.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 23, 1989.

Decided April 3, 1990.

As Amended April 27, 1990.

Rehearing and Rehearing En Banc Denied
June 18, 1990.

George L. Weber, with whom Kenneth L. Glick was on the brief, for petitioner.

Jill Hall, Atty., F.E.R.C., with whom Catherine C. Cook, Gen. Counsel, and Jerome M. Feit, Solicitor, Washington, D.C., F.E.R.C. were on the brief, for respondent.

Before WALD, Chief Judge, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM.

In this case, we are called upon to review decisions of the Federal Energy Regulatory Commission ("Commission" or "FERC") disposing of a proposed rate increase by petitioner National Fuel Gas Supply Corporation ("National"). In an order issued thirty-two days after National submitted its rate filing but one day before the proposed rate was to become effective, the Commission suspended National's rate increase and set it for hearing pursuant to section 4(e) of the Natural Gas Act of 1938, 15 U.S.C. § 717c(e) (1988). Relying on a prior settlement with National, the Commission also directed National to modify its filing to incorporate a deduction from its rate base of a "deferred tax reserve" associated with National's gas production facilities. National maintains that the Commission's suspension order was untimely and that the deduction of the tax reserve fund was not authorized by the settlement.

We deny the petition in part and remand the case to the Commission. We find no merit in National's challenge to the timeliness of the Commission's suspension order. Section 4 of the National Gas Act specifies that *a pipeline* may not institute a rate increase "except after thirty days' notice to the Commission and to the public," 15 U.S.C. § 717c(d) (1988); the statute says nothing about when *the Commission* must exercise its power to suspend a proposed rate increase. Because we find that the Commission has reasonably "filled" this legislative interstice, we defer to the Commission's conclusion that it may suspend a rate more than thirty days after it is filed so long as the rate has not yet become effective. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). We remand the case, however, so that the Commission may reconsider its ruling on National's deferred tax reserve in light of the court's recent decision in *Public Utilities Commission v. FERC,* 894 F.2d 1372 (D.C.Cir.1990). Moreover, to minimize any prejudice that

this disposition may cause National, we order FERC to complete this reconsideration within thirty days.

## I. BACKGROUND

The Commission's disposition of National's rate filing is integrally related to the Commission's implementation of the National Gas Policy Act of 1978, 15 U.S.C. §§ 3301–3432 (1988) ("NGPA"). The NGPA replaced the Commission's authority to regulate the price of gas at the wellhead with a complex regime of statutorily fixed prices. *See generally Public Serv. Comm'n v. Mid–Louisiana Gas Co.*, 463 U.S. 319, 332–34, 103 S.Ct. 3024, 3032–33, 77 L.Ed.2d 668 (1982).[1] In *Mid–Louisiana*, the Supreme Court held that the NGPA extended to pipeline-produced gas [2] and remanded the case to the Commission to determine whether NGPA pricing should apply at the point of "intracorporate transfer" or at the point of "downstream transfer" from a pipeline to a customer. *See* 463 U.S. at 342–43, 103 S.Ct. at 3037–38. Also left unresolved by *Mid–Louisiana* was the status of deferred tax reserve funds accumulated by pipelines in connection with the Commission's pre-NGPA rate-making methodology for pipeline-produced gas. After this court ordered the Commission to reconsider a decision holding that pipelines were free to dispose of these funds as they wished, *see Public Utilities Comm'n v. FERC*, 817 F.2d 858, 862–63 (D.C.Cir.1987) ("*PUC I*"), the Commission adopted a policy allowing pipelines to retain the funds but directing them to deduct the funds from the their transmission-service rate bases, *see El Paso Natural Gas Co.*, 43 F.E.R.C. ¶ 61,272, at 61,747–48 (1988) ("*El Paso Order*"), *reh'g denied*, 44 F.E.R.C. ¶ 61,073 (1988).[3]

National's conversion to NGPA pricing is governed by a 1984 settlement approved by the Commission. The settlement reflects the Commission's determination that National became eligible to charge NGPA prices on June 1, 1982, *see National Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1566–68, 1572–74 (D.C.Cir.), *cert. denied*, 484 U.S. 869, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987), and purports to resolve "all issues" relating to National's use of such pricing, Joint Appendix ("J.A.") 89. Nonetheless, at the time at which the settlement was executed, *Mid–Louisiana* was still pending before the Commission on remand, and because it was uncertain how the Commission's disposition of the case would affect other issues relating to NGPA pricing for pipeline-produced gas, the parties included the following reservation clause:

> The parties to this Stipulation therefore agree that Commission approval of this Stipulation is subject to all Commission orders concerning ... implementation of the Mid–L[ouisiana] decisions. In this regard, the parties to this Stipulation agree not to challenge National's elimination of production costs from the cost of service underlying its rates in [certain pending filings] ... subject to such adjustment that may be necessary if the Commission determines that the point of intracorporate transfer of company-owned production is not at the wellhead. ...

J.A. 35–36 ("reservation clause") (emphasis added).

On December 30, 1988, National, pursuant to section 4(d) of the National Gas Act, 15 U.S.C. § 717c(d) (1988), filed a proposed $1.5 million rate increase to become effective February 1, 1989. On January 31, 1989—thirty-two days later—the Commission, pursuant to section 4(e), *id.* § 717c(e),

---

**1.** FERC inherited its jurisdiction over these prices from its predecessor, the Federal Power Commission.

**2.** However, unless a pipeline reserved the right to charge NGPA prices retroactively, the pipeline can charge such rates only upon the approval of a new tariff. *See National Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1566–67,

1572–74 (D.C.Cir.), *cert. denied*, 484 U.S. 869, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987).

**3.** The background and mechanics of the deferred tax reserve funds are discussed more extensively in *PUC I*, 817 F.2d at 860–61, and in *Public Utilities Commission v. FERC*, 894 F.2d 1372, 1378–79 (D.C.Cir.1990).

issued an order suspending National's rate increase for five months and setting the proposed rate for hearing. The Commission also directed National to resubmit its filing after deducting from its rate base the deferred tax reserve fund associated with National's production facilities as of May 31, 1982. *See National Fuel Gas Supply Corp.*, 46 F.E.R.C. ¶ 61,101, at 61,411–12 (1988). The Commission based this ruling on the *El Paso* Order, which the Commission concluded was an "order[ ] concerning implementation of the *Mid–L[ouisiana]* decisions" for purposes of the reservation clause. *See id.* In its order denying rehearing, the Commission rejected National's claim that the suspension order was untimely, reasoning that FERC need not act within section 4(d)'s 30–day notice period so long as the Commission acts before the *effective date* of the proposed increase. *See National Fuel Gas Supply Corp.*, 46 F.E.R.C. ¶ 61,409, at 62,289–90.[4]

National petitions for review. It continues to challenge the timeliness of the Commission's suspension order as well as the Commission's conclusion that the *El Paso* Order implements the *Mid–Louisiana* decision for purposes of the reservation clause.

## II. ANALYSIS

### A. *Timeliness of the Suspension Order*

National argues that the Commission failed effectively to suspend National's rate increase because the Commission's suspension order was untimely. According to National, the time limit for suspending the rate under section 4(e) was controlled not by National's selection of an effective date—the Commission's position—but rather by the thirty-day minimum notice period

4. The Commission did grant rehearing on certain issues not pertinent to this case. *See id.* at 62,293.

5. If the Commission takes effective action under section 4, it may suspend a rate for up to five months, and may order the pipeline to refund rates collected after that date should the pipeline ultimately fail to demonstrate that the rate proposed is just and reasonable; otherwise, the

established by section 4(d). Because the Commission suspended National's rate filing *thirty-two* days after it was filed, National contends that we must void the suspension order and direct the Commission to put National's filed rate into effect as of February 1, 1989, subject only to the Commission's power under section 5 to challenge the rate prospectively.[5] We disagree.

Our analysis of the Commission's interpretation of the Natural Gas Act is controlled by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "[E]mploying traditional tools of statutory construction," we ask first "whether Congress has directly spoken to the precise question at issue"; if so, we "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842, 843 & n. 9, 104 S.Ct. at 2781, 2781 & n. 9. If not, we "defer to the agency's interpretation of the statute so long as it is reasonable and consistent with the statutory purpose." *Ohio v. Department of the Interior*, 880 F.2d 432, 441 (D.C.Cir.1989); *see Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

Congress has not spoken clearly to the issue of whether the Commission may exercise its section 4(e) suspension powers *after* expiration of the thirty-day notice period under section 4(d) but *before* the effective date of the filed rate. Section 4(d) states that

[u]nless the Commission otherwise orders, no change shall be made *by any natural-gas company* in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, *except after thirty days' notice to the Commission and to the public.*

Commission must proceed under section 5 of the Natural Gas Act, 15 U.S.C. § 717d (1988), which puts the burden on the Commission to show that a rate is unjust or unreasonable and which authorizes the Commission to set a reasonable rate only prospectively. *See generally Sea Robin Pipeline Co. v. FERC*, 795 F.2d 182, 183–84 (D.C.Cir.1986).

15 U.S.C. § 717c(d) (emphasis added). Section 4(e) provides that the Commission "may suspend the operation" of a proposed rate increase for no more "than five months beyond the time when it would otherwise go to into effect." 15 U.S.C. § 717c(e). Neither the text nor the legislative history of these provisions expressly addresses the question of when the Commission must exercise its suspension power if the pipeline—as in this case—gives *more* than the thirty-day minimum notice required by section 4(d).[6]

 We find the Commission's answer to this question—that "section 4(d) only requires the Commission to act prior to the proposed effective date," 46 F.E.R.C. at 62,290—to be perfectly "reasonable and consistent with the statutory purpose." *Ohio v. Department of the Interior*, 880 F.2d at 441. Taken together, sections 4(d) and 4(e) evidence Congress' preference "for the earliest effectuation of ... permissible rate changes consistent with appropriate Commission review." *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div.*, 358 U.S. 103, 114, 79 S.Ct. 194, 200, 3 L.Ed.2d 153 (1958). By permitting suspension any time up to the effective date proposed by the pipeline, the Commission's reading of section 4(d) promotes the goal of agency review without detracting at all from the goal of early effectuation of permissible rate changes. Thus, we have no difficulty in concluding that the Commission's position reflects a "permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

National resists this conclusion. Pointing to our decision in *Indiana & Michigan Elec. Co. v. FERC*, 502 F.2d 336 (D.C.Cir. 1974), *cert. denied*, 420 U.S. 946, 95 S.Ct.

1326, 43 L.Ed.2d 424 (1975), National argues that the Commission's reading of section 4(d) is inconsistent with case law. National also maintains that the Commission's position represents an unjustified departure from agency policy. These contentions are without merit.

*Indiana & Michigan Electric* is not dispositive of the case at hand. In that case, we invalidated a FERC regulation requiring *sixty days'* notice for filing under section 205(d) of the Federal Power Act, which at the time of the decision was worded identically to section 4(d) of the Natural Gas Act.[7] We stated:

> Thirty days is the maximum a utility *can be compelled to wait* from the time it files rate changes *until the date the changes take effect* unless the Commission properly exercises its suspension powers.

*Id.* at 341 (emphasis added). In this case, National, far from being *compelled* to wait more than thirty days before its rate became effective, *chose* to do so by filing its rate *thirty-three* days before the proposed effective date. As the Commission noted, *see* 46 F.E.R.C. at 62,289–90, *Indiana & Michigan Electric* says nothing about when the Commission must exercise its suspension powers in a case where a pipeline has elected to give more than the minimum thirty-day period of notice required by section 4(d).[8] But even if the case *had* directly addressed that question, *Indiana and Michigan Electric*, as a pre-*Chevron* decision, would not foreclose the Commission from reinterpreting an ambiguity in its organic statute. *See Clinchfield Coal Co. v. Federal Mine Safety and Health Commission*, 895 F.2d 773, 777–78 (D.C.Cir.

---

**6.** Under FERC regulations, a pipeline may give up to sixty days' notice before implementing a rate change under section 4. *See* 18 C.F.R. § 154.22 (1989).

**7.** Congress subsequently amended section 205(d) to require sixty days' notice for proposed rate changes. *See* 16 U.S.C. § 824d (1988).

**8.** The same is true of *Phillips Petroleum Co. v. FPC*, 227 F.2d 470 (10th Cir.1955), *cert. denied*, 350 U.S. 1005, 76 S.Ct. 649, 100 L.Ed. 868 (1956),

another case upon which National places heavy reliance. The court in *Phillips* simply held that the Commission could rely on a *telegram* to serve a suspension order within the thirty-day notice period of section 4(d), *see id.* at 473, 474; nothing in the opinion addresses the issue of whether the Commission *must* issue its suspension order within thirty days if the pipeline elects to give more than thirty days' notice of a rate increase.

1990); *Natural Resources Defense Council v. EPA*, 859 F.2d 156, 187 (D.C.Cir. 1988).

Nor did the Commission's decision in this case depart from agency precedent. As early as 1956, FERC's precursor, the Federal Power Commission, construed section 4 to permit suspension more than thirty days after a rate was filed but before the effective date announced by the pipeline. *See Midstates Oil Corp.*, 16 F.P.C. 1213, 1214–15 (1956). In the only judicial decision directly addressing the issue, the Tenth Circuit upheld this reading of the statute in 1961. *See Pan American Petroleum Corp. v. FPC*, 287 F.2d 469, 471–72 (10th Cir.1961). The Commission has recently acknowledged this position, *Idaho Power Co.*, 41 F.E.R.C. ¶ 61,196 at 61,510 (1987), and National refers us to *no* case in which the Commission has disavowed it.

◼ Nevertheless, because the Commission apparently takes action *before* thirty days in the majority of cases in which a pipeline gives more than the minimum notice period required by section 4(d), National argues that the Commission's suspension order in this case was contrary to FERC's "settled practice." *See* Petitioner's Reply to FERC Letter at 1 (March 8, 1990). This argument is fallacious. The Commission's contention that it has the *authority* to suspend an as-yet ineffective rate more than thirty days after filing does not imply that the Commission is *prohibited* from suspending such a rate *before* thirty days if the Commission completes its review at an earlier point. In sum, National has failed to offer any ground for upsetting the Commission's permissible construction of the Natural Gas Act.

## B. *National's Deferred Tax Reserve*

◼ Our review of the Commission's disposition of National's deferred tax reserve is complicated by an intervening change in the law. Less than three weeks before oral argument—and well after the parties submitted their briefs—the court issued its decision in *Public Utilities Commission v. FERC*, 894 F.2d 1372 (D.C.Cir.1990) (*"PUC II"*), invalidating the Commission's *El Paso* Order. Although we upheld the Commission's determination that pipelines should retain their deferred tax reserve funds, we held that the NGPA divests the Commission of any authority to regulate the use of these funds. *See id.* at 1380–82.

*PUC II* appears to prevent us from upholding the Commission's treatment of National's deferred tax reserve. Even if we were to affirm the Commission's determination that the *El Paso* Order was an order "implementing" *Mid–Louisiana* for purposes of the reservation clause, the fact remains that *PUC II* appears to deprive the *El Paso* Order of the legal effect that is here sought by the Commission. In addition to having to consider this apparent intervening change in the law, National also urges us to reject the Commission's construction of the reservation clause on the merits. In light of these developments, the Commission now seeks a remand of the case so that it may determine the appropriate basis for affording National relief.

We grant the Commission's request for a remand. We afford broad deference to the Commission's construction of a settlement agreement because we recognize that settlement interpretation implicates both the Commission's superior " 'knowledge of industry conditions and practices,' " *National Fuel Gas Supply*, 811 F.2d at 1570 (quoting *Columbia Gas Transmission Corp. v. FPC*, 530 F.2d 1056, 1059 (D.C.Cir. 1976)), and the Commission's exercise of its congressionally delegated powers, *see id.* at 1569–70. It would therefore be inappropriate for us to venture an assessment of the Commission's reading of the reservation clause now that the legal background against which the Commission rendered its interpretation has been so dramatically—and, no doubt, unexpectedly—altered. Remand under these circumstances also comports with the general principle that an agency should be afforded the first word on how an intervening change in law af-

fects an agency decision pending review. *See, e.g., Panhandle E. Pipeline Co. v. FERC*, 890 F.2d 435, 438–39 (D.C.Cir.1989).

We recognize, however, the potential inconvenience of this disposition for National. It has already endured the normal course of appellate review and is entitled to a speedy resolution of its challenge. At oral argument, counsel for the Commission indicated that the Commission would have no objection to affording expedited consideration to National's challenge on remand. We therefore order the Commission to complete its reconsideration of the deferred tax reserve issue within thirty days.

## III. CONCLUSION

We deny National's petition in part and remand the case to the Commission. Because we find that the Commission has offered a reasonable answer to the question of whether section 4 of the Natural Gas Act authorizes the Commission to suspend a rate more than thirty days after filing but before the rate's effective date, we reject National's challenge to the timeliness of the Commission's suspension order. In light of our recent decision in *Public Utilities Commission v. FERC*, 894 F.2d 1372 (D.C.Cir.1990), however, we are unable to uphold the Commission's disposition of National's deferred tax reserve fund. Instead, we remand that aspect of the case to the Commission so that it may take action consistent with this opinion within thirty days.

*It is so ordered.*